No. 30,516.

WILLIAM MALONE, *Appellee*, v. (NELLIE SULLIVAN et al., *Appellees*) ANNIE WILLIAMS, *Appellant*.

(14 P. 2d 647.)

Opinion filed October 8, 1932.

*John J. McCurdy,* of Lincoln, *C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the appellant.

*Samuel E. Bartlett, G. D. Miner,* both of Ellsworth, *Z. C. Millikin, J. F. Corder,* both of Salina, and *Theodore Metz,* of Lincoln, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to determine the rights of the litigants in a savings-deposit account with the Putnam Trust Company, of Salina.

The fund had originated in moneys belonging to the late Amy Malone, a thrifty woman of Lincoln county. Annie Williams was the widowed sister of Amy Malone, in whose welfare Amy was interested. Amy was the wife of William Malone, plaintiff herein. Their marriage was an unhappy one and their alienation so com-

plete that so far as practicable they managed their respective properties separately. Amy owned a farm and had substantial bank accounts in Lincoln and Saline counties. On July 27, 1926, she and her sister, Annie Williams, called at the office of the Putnam Trust Company in Salina. Amy had with her $2,467 in cash. She stated to the vice president of the trust company that she wished to open a savings account in such a way that if anything happened to herself her sister Annie would get the money. The officer suggested the advisability of opening what he called a joint account in the names of both women. He testified:

"A. Well, I explained what that meant, that the account would stand in both names and either one could draw the money at any time on presentation of the book.

"Q. What did she say about that? A. She said that was satisfactory or words to that effect.

"Q. Then what did you do? A. Gave them a pass book and started the account. She made a deposit of $2,467 in currency.

"Q. At that same time did you have them sign anything? A. I did, a signature card.

"A. That is, a signature card showing the names of Mrs. Amy Malone and Annie Williams.

"Q. And at that same time did you do anything else? A. Yes, I made out this deposit book.

"Q. Did you write the names in that [pass] book the way they are shown now except for the line that is drawn through one name? A. I did."

Subsequently Amy Malone added substantial amounts to this fund, which on the records of the trust company was designated as account No. 1347. Neither of the women made any withdrawals from it prior to the death of Amy, which occurred on May 3, 1929. When that happened the trust company canceled the name of Amy Malone on all its records pertaining to account No. 1347. On that date Annie Williams presented the pass book to the trust company and withdrew the sum of $26.42 and in like manner she withdrew $26.60 on July 9, 1929. The balance in the account on that date was $4,282.84.

Amy died testate. By her will she gave her estranged husband $100, and devised her real and personal property to her one brother and four sisters. The husband had not consented to the provisions of the will; he declined to take under its terms, and claimed his

statutory half interest in Amy's estate under the law. He likewise claimed that this savings deposit account created by his wife was an asset of his wife's estate.

Hence this lawsuit. Plaintiff brought this action pleading certain facts. Annie Williams' answer supplied most of the other pertinent facts. The brother and sisters of Amy and their spouses and certain other defendants were impleaded.

The cause was tried before a jury which answered many special questions and found that Annie Williams was the owner of the fund in controversy. Plaintiff filed a motion to set aside the general and special verdicts and to grant a new trial. The court announced its intention to grant a new trial; and thereupon it was agreed that the court might make its own findings of fact and conclusions of law on the evidence which had been presented to the jury. This was done. The trial court made findings of fact in accord with the evidence summarized above.; and its conclusions of law, in part, read:

"(1) Amy Malone did not part with her ownership of the fund in account No. 1347 under the understanding and agreement made between Amy Malone and Annie Williams and the Putnam Trust Company on July 17, 1926, and she remained the sole owner of said account and all deposits subsequently made in said account, up to the time of her death.

"(2) Under the understanding and agreement between Amy Malone and Annie Williams and the Putnam Trust Company, Annie Williams had no other interest in said account No. 1347 than a right to check on said account and at the death of Amy Malone she did not become the owner and is not now the owner of the money due from the Putnam Trust Company in account No. 1347 and has no right to collect or receive the same or any part thereof except such sum as she may be entitled to receive on distribution by the probate court of the estate of Amy Malone.

"(3) William Malone, as the surviving husband of Amy Malone, deceased, owns and is entitled to have and receive one-half of all the real and personal property of which said Amy Malone died the owner, and the remaining half of her estate at her death passed to and became the property of the remaining devisees and legatees named in her will; . . .

"(4) The accounts numbered 1347 and 1545 in the Putnam Trust Company are a part of and belong to the estate of said Amy Malone, deceased."

Motions to set aside the findings and to vacate and modify the court's conclusions filed by various litigants were overruled and judgment was entered accordingly.

Annie Williams appeals, assigning errors which chiefly center about the correctness of the trial court's conclusions of law.

Although joint deposit accounts are familiar to Kansas banks and their customers, the identical question presented in this case has not

heretofore required the consideration of this court. The legislature has taken note of such accounts to this extent:

"When a deposit has been made, or shall hereafter be made, in any bank or trust company transacting business in this state, in the names of two persons, payable to either, or payable to either or the survivor, such deposit or any part thereof, or any interest or dividend thereon, may be paid to either of said persons whether the other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made." (R. S. 9-173.)

This statute, however, does not attempt to define the right of a surviving joint depositor as against third parties who may claim an interest in the fund.

Before looking into the pertinent decisions of other jurisdictions, it may be well to notice R. S. 22-132, which abolished joint tenancy as it had existed at common law. The section reads:

"If partition be not made between joint tenants or joint owners of estates in entirety, whether they be such as might have been compelled to make partition or not, or whatever kind the estate or thing holden or possessed be, the parts of those who die first shall not accrue to the survivors, but shall descend or pass by devise, and shall be subject to debts or charges and be considered to every other intent and purpose as if such joint tenants or tenants of estate in entirety had been or were tenants in common; but nothing in this act shall be taken to affect any trust estate." (R. S. 22-132; G. S. 1909, § 2966.)

This section was briefly considered in *Withers v. Barnes*, 95 Kan. 798, 149 Pac. 691, where it was held that it merely put an end to joint tenancy and survivorship as a matter of law—that in matters of intestate succession the common-law rule of survivorship should no longer prevail in Kansas. The statute did not undertake to forbid joint tenancy and survivorship by negotiation or contract of the parties concerned; and it does say that its terms shall not be construed to affect any trust estate.

There was nothing inherently wrong in the contractual arrangement made between Amy Malone, Annie Williams and the trust company. The money belonged to Amy. She could do with it what she pleased. She chose to make the arrangement outlined above with her sister and the trust company. Cases of uncompleted gifts are cited where it was held that such gifts were ineffective because the donor did not perfect the gift or because the donor retained the power of revocation. Some of the justices of this court are inclined to hold that tested by that rule of law, and treating the contractual arrangement with the trust company as a mere gift from Amy to her

sister, there was no retention of power in Amy to revoke the gift; that she could not return to the trust company a week later and effectively revoke the gift; nor could she substitute somebody else in lieu of her sister Annie as joint depositor with herself as owner of the fund. Without attempting to dispose of the question at bar on the gift theory, a decision of greater unanimity can be reached by regarding the transaction between Amy, her sister, and the trust company as a legitimate contractual arrangement, and there are ample and well-considered precedents to support that view.

In *Equitable Loan & Security Co. v. Waring*, 117 Ga. 599, 62 L. R. A. 93, a fund collected by a loan and investment company was the subject of protracted and tedious litigation. The supreme court dealt with the fund as one created by contract, and as to which the claimants were virtually joint tenants with the rights of survivorship. On denying an application for rehearing, the court said:

"It is further contended that a rehearing should be granted for the reason that in the opinion of the majority it is recognized that the scheme is dependent, to some extent, upon the doctrine of survivorship, and that, as joint tenancy with its incident of survivorship has been abolished in this state, the ruling is unsound to the extent referred to. It is true that the common-law doctrine of survivorship among joint tenants was abolished by the constitution of 1777. . . . *While the doctrine of survivorship, as applied to joint tenancies, has been distinctly abolished and does not exist in this state, there is no law of this state that we are aware of which prevents parties to a contract,* or a testator in his will, *from expressly providing that an interest in property shall be dependent upon survivorship.* Of course, all presumptions are against such an intention, but where the contract or will provides, either in express terms or by necessary implication, that the doctrine of survivorship shall be recognized, *we know of no reason why a provision in the contract or will dependent upon such doctrine may not become operative under the laws of this state.* . . . In *Arnold v. Jack,* 24 Pa. St. 57, the supreme court of Pennsylvania held that, though survivorship, as an incident to joint tenancies, had been abolished in that state, it might be expressly provided for by will or deed; Knox, J., in the opinion saying: 'But, conceding that the right of survivorship, as an incident of a joint tenancy, no matter how created, is gone, it by no means follows that this right may not be expressly given, either by a devise in a will, or by grant in a deed of conveyance. It may cease to exist as an incident, and yet be legally created as a principal.' . . . In the case of *Taylor v. Smith,* 116 N. C. 531, 21 S. E. 202, the supreme court of North Carolina held that the act abolishing survivorship in estates in joint tenancy did not prohibit contracts making the rights of the parties dependent on survivorship. In the opinion Avery, J., said: 'The act of 1784 (Code 1895, § 1326) abolishes survivorship where the joint tenancy would otherwise have been created by the law, but does not operate to prohibit persons from entering into written contracts as to land, or verbal agreements as to personalty;

such as to make the future rights of the parties depend upon the fact of survivorship.' See, also, 17 Am. & Eng. Enc. Law, 2d ed. p. 650." [Italics ours.] (pp. 675-677.)

A case not distinguishable either in principle or on the facts from the one of present concern was *Deal's Adm'r v. Merchants, &c., Bank,* 120 Va. 297, L. R. A. 1917C, 548, in which one Martha S. Deal deposited a sum of money in a bank so that she in her own lifetime could draw on it if she so desired and that her sister, Ellen C. Holland, could likewise do so, and that any balance of such deposit should belong to the survivor of the two sisters. The receiving teller accepted the deposit, explaining to Mrs. Deal that such a deposit was a joint account, that either herself or her sister could draw on it by presenting the pass book. Mrs. Deal drew on the account several times before her death about a year later. Mrs. Holland then drew on the account to pay the funeral expenses; and the balance, about $800, was claimed by Mrs. Deal's administrator. In affirming a judgment against the administrator the court ruled that money deposited by the owner in a bank to the credit of himself or another belongs upon his death to the latter, and not to his administrator. One section of the syllabus reads:

"Money of M. was deposited in a bank on savings account to the credit of M. or E. *Held,* That upon the death of M. the balance of such account belonged to E."

In the opinion the court said:

"We are of opinion that, under the facts of this case, the effect of the deposit by Mrs. Deal to the joint credit of herself and her sister was to create a contract relation between the bank and the two joint depositors, under which the amount to the credit of the account became the property of Ellen C. Holland as the survivor of decedent and herself." (p. 298.)

The L. R. A. report of this case is followed by a 23-page annotation which fully supports the decision.

Another case quite similar to the one at bar was *Kelly v. Beers,* 194 N. Y. 49, 128 A. S. R. 543, where a Mrs. Beers who had a deposit account in a savings bank inquired of one of its officials how she could have the account fixed so that she or her daughter, Sarah E. Kelly, could draw the money at any time, and so that if anything happened to her the daughter would get the money. The bank officer told the woman to bring her daughter and he would "fix it up." Mother and daughter came to the bank, and the officer had the mother close out the old account and open a new one in the name of "Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor."

The officer took the signatures of the mother and daughter in the depositors' signature book and filled out a new pass book headed as follows: "The Home Savings Bank of Albany, N. Y., in account with Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor of them," and in this pass book he credited the sum of $1,829.34 passed from the old account. After making her signature and seeing her daughter do likewise, Mrs. Beers asked the assistant "if the money was fixed so that in case anything should happen to her plaintiff could get it without any trouble," and also, if plaintiff should go to the bank "could she draw the money at any time," and the assistant in answer to both questions said, "Yes." Later the mother added to this account; and neither she nor her daughter drew on it during the remaining two years of the mother's lifetime. Following that event the daughter brought an action against her brother to establish her ownership of the account. The trial court ruled against her. On appeal this judgment was reversed, the court saying:

"The possibility of so fixing a bank account that two persons shall be joint owners thereof during their mutual lives and the survivor take upon the death of the other is so well established that we may assume and need not discuss it." (p. 55.)

In *Kennedy v. McMurray*, 169 Cal. 287, the court had to consider the legal question involved in a savings account created by written agreement between a father and daughter where either should have the right to draw on the fund and that a receipt by either should be a full acquittance to the bank. It was held that the agreement in effect created a joint ownership with the incidental right of survivorship, and that—

"It is immaterial to the creation of such joint ownership that the initial deposit to such joint account was affected by a transfer by the father of a deposit then standing on the books of the bank in his individual name, or that he subsequently during his lifetime retained exclusive possession of the pass book, or that the agreement was contained in a written form provided by the bank in a measure to protect itself in making payments." .(Syl. ¶ 2.)

In *Wisner v. Wisner*, 82 W. Va. 9, a husband and wife opened a joint savings account in a bank upon an agreement between themselves and the bank that upon the presentation of the pass book the deposit would be "payable to the order of either, or the survivor." While this contract was made in Maryland and with a Maryland bank, in the action which arose in West Virginia over

the ownership of the deposit after the death of the husband, the supreme court of the latter state said:

"But it is well settled that the parties may by such a joint deposit or by deed or other contract create a joint estate therein, with right of survivorship, notwithstanding right of survivorship at common law has been abrogated by statute. In such case the right of survivorship is created by contract and not as one pertaining to joint tenancy as at the common law; and that such contract may be evidenced by a joint deposit upon terms and conditions such as we have under consideration in the case at bar. (*Colmary v. Fanning*, 124 Md. 548; *Mathias v. Fowler*, Id. 655; *West v. McCullough*, 108 N. Y. Supp. 493; *Clary v. Fitzgerald*, 155 App. Div. (N. Y.) 659; *In Re Meehan*, 69 N. Y. Supp. 9; *Kennedy v. McMurray*, supra, and note 520; Magee on Banks and Banking, [2d ed.] 292; 2 Morse on Banks and Banking, [5th ed.] sec. 609, p. 277, *et seq.*, and notes.

". . . In Maryland the statute, sec. 13, art. 50, 2 Pub. Gen. Laws, Maryland, provides that, 'No deed, devise, or other instrument of writing shall be construed to create an estate in joint tenancy,' unless it be 'expressly provided that the property thereby conveyed is to be held in joint tenancy.' Nevertheless it is recognized in *Colmary v. Fanning*, supra, that such right of survivorship in a joint estate in a deposit may be created by stipulation or agreement evidencing the same contained in a bank book, such as we have before us in the case at bar. . . . And notwithstanding our statute, section 18, chapter 71, Code, it has been distinctly decided by this court, that by virtue of section 19, of said chapter, said section 18 thereof does not apply to joint tenancy in personal estate and right of survivorship therein when the contract or deed of the parties evidences an intention to create such joint estate and such right of survivorship therein. *Bank of Greenbrier v. Effingham*, 51 W. Va. 267, 269. So that whether we apply the law of Maryland or the law of West Virginia, the result, so far as the rights of the parties to the present controversy are concerned, must be the same. In either case the right of survivorship in the fund in controversy was complete in appellant upon the death of her husband." (pp. 11, 12.)

Yet another well-reasoned case was *Trust Co. v. Reagan et al.*, 193 Mo. App. 290, where a savings bank depositor requested that his account be made a joint account, in favor of himself and another, and a signature card was sent to the latter, who signed and returned it to the bank, and the account was thereupon made subject to the withdrawal of either, or the survivor. It was held that there was a complete gift of a joint interest in the account, entitling the donee to the fund on his surviving the donor, although the donor had at all times retained the pass book, which, under the rules of the bank, was required to be presented when an amount was withdrawn. The opinion discusses the leading cases on this subject and quotes from standard textbooks, but concludes, in part, thus:

"We have no authority in our state directly bearing upon this question. As noted by the supreme court in New Hampshire in *Smith, Admx., v. Bank,* supra, [64 N. H. 228] as well as by the vice chancellor in *Dunn v. Houghton,* supra, [51 Alt. 71] there is a very decided conflict of opinion on this question." (p. 305.)

In the brief of appellees we are reminded that the trial court's findings are conclusive. Quite so, in respect to its findings of fact. We accept those findings as correct, but our study has been to reach a sound conclusion of law from those findings—with what help we can glean from courts which have had to deal with the legal question arising from such an arrangement as Amy Malone and her sister had consummated with the trust company. We hold that this arrangement was essentially contractual, not subject to rescission or cancellation, and binding on all three parties; that no rule of law or public policy forbade such arrangement; and that the right of Annie Williams to the entire fund must be respected and upheld.

It follows that the judgment must be reversed and the cause remanded with instructions to enter judgment for the appellant. It is so ordered.

HARVEY and HUTCHISON, JJ., dissenting.

BURCH, J., not sitting.