**98 P.2d 834**

### MENGER v. OTERO COUNTY STATE BANK et al.

**No. 4503.**

Supreme Court of New Mexico.

Jan. 22, 1940.

Shipley & Shipley, of Alamogordo, and Edwin Mechem, of Las Cruces, for appellant.

J. L. Lawson, of Alamogordo, for appellees.

MABRY, Justice.

The question here presented involves one of the right of the surviving wife to claim as her own the money from a joint account placed in defendant bank by the husband and out of his own estate and with the right of both husband and wife to withdraw from the account upon their individual signature during their respective lifetimes.

Suit was instituted by plaintiff, as administrator of the estate of the deceased husband, seeking to have the defendant bank pay over to him for the benefit of the estate, certain moneys held by the bank in a joint savings account opened and carried as hereinafter explained, unexpended by the wife at the time of her death. Judgment was for defendant bank and intervenor, the administrator of the estate of the wife whose death occurred some three years after that of her husband, and plaintiff appeals.

Plaintiff and appellant, as administrator of deceased husband's estate, claims, on behalf of the estate, that the wife had only a right to such part of the money on deposit

as she may have used during her lifetime, and that the remainder belonged to the estate of the deceased husband.

Defendant bank, and intervenor Johnson as administrator of the estate of the deceased wife, urges that as survivor, the wife became the owner of all the money and after her death any remainder belonged to her separate estate.

The amount involved, some $2,000, it is conceded, was placed in the joint account by the husband and from his own separate estate; the wife made no contribution thereto from her own estate, and none of the money represented community property.

The account was opened in the name of "Mr. Elmer Watkins or Mrs. C. M. Watkins" in June of 1930 and some four years prior to the death of the husband, at which time the account had been augmented somewhat, but not substantially, by interest earnings and contributions by the wife after the husband's death.

Both husband and wife had the right to and did withdraw from the account during their lifetimes; the withdrawals by the wife, during the lifetime of the husband, as well as thereafter, being small and rather infrequently made. The wife had some slight income which was in amount substantially sufficient to provide for her after her husband's death.

The wife was appointed administratrix of the estate of her husband soon after his death, but never proceeded with the matter beyond qualifying and doing some incidental acts, unimportant in a consideration of the case. She never prepared and filed an inventory which would indicate her understanding of her estate in or right to the money in question.

Plaintiff presents the view that, the trial court, without consideration of the intention of the parties at the time the said joint saving account was opened, based its conclusions of law and judgment upon the fact that the joint account, payable to the husband or the wife, as a matter of law, became the property of the wife as a survivor upon the husband's death.

We cannot say that the trial court took this narrow view of the matter. The evidence in the case, the making and denial of findings of fact and conclusions of law, amply affords a reasonable assumption that it did not.

The question becomes simply one of whether there be any basis in fact and law for the support of the court's findings, conclusions of law and judgment. We think there is. While testimony of the banker, Witness Spence, standing alone, does not make it very plain as to what was in fact the reason for the opening of the joint account, his testimony does throw much light upon the subject when taken in connection with the testimony of Witness Lawson, as well as that of other witnesses.

Witness Lawson testified to having been consulted by Elmer Watkins, the deceased, about June 30th, 1930, the said Watkins

being much concerned about having the available cash which he then possessed, "tied up in court" in the event of the death of either himself or his wife, if either of them at the time held the money or any part of it in their individual names.

Speaking of the conversation with Elmer Watkins the day after he had put $1,000 of the amount in the bank in the sole name of his wife, this witness testified: "He seemed worried about money to take care of his wife if anything happened to him and wanted her to have the money in the bank * * * he didn't want his money involved in court * * * it was then that I suggested to him to put their money in the name of himself or his wife, and have it understood with the bank that either could check on it during their life, and in case of death it would be available to the other party. After that I don't know what took place." What then took place was, that Watkins, the husband, returned directly to the bank, withdrew the $1,000 just deposited to the separate account of his wife and opened the joint account, to which other amounts were thereafter added.

Lawson was attorney for the defendant bank; the husband had been sent to him by Witness Spence, cashier of the bank, for direction and advice which Spence himself felt incompetent to give. This was immediately, and a few hours after the said deceased had inquired of the said Spence what would happen to the $1,000 he had just the day before placed to the individual account of his wife, Mrs. C. M. Watkins, in case either should die, and after he had expressed some concern to Spence lest he still had not so placed the money that it would not be "tied up in court."

It seems clear enough that there is evidence to sustain the court's finding that it was the desire of the husband to place the money where, although it would be subject to the use of either while they lived, upon the death of either of them the money so deposited and still left would belong to the survivor, under such conditions that no court action would be necessary to accomplish this immediate result.

This is particularly true when we take the testimony of other witnesses. This shows clearly the procrastination and unexplained delay on the part of the widow in preparing and filing an inventory in the estate of her deceased husband.

 The testimony of the attorneys for plaintiff, while persuasive, is not sufficient to overcome the binding character of the court's findings and conclusions that the widow's circumstantial or indefinite commitments, and her actions in connection with the matter of the inventory, were not sufficient to show she held and claimed only a life estate in the money. There is sufficient evidence to support the findings and conclusions to the contrary and they will therefore not be disturbed.

Some reference is made to a will executed by the deceased husband some two or three years before the joint account in

controversy was opened. Though the will itself is not in evidence, testimony was admitted to show substantially the terms thereof. The wife by the will was given a life estate in the property of the husband with anything remaining after her death to go to the children of the husband by a former wife. No specific reference was made to money. This will is relied upon by plaintiff to show the intention of the husband that the money here involved in the joint account should likewise be treated; plaintiff claiming said will should have been received and considered as lending strength to plaintiff's theory that neither husband nor wife, during the lifetime of both, as well as after the death of the husband, ever considered that the wife had more than a life estate in any of the property.

The court doubtless gave no weight to this argument and found the evidence of no value in support of such claim. The trial court doubtless reasoned, as well it may have, that the intention of the deceased husband at the time of his making the will some years prior, would have no bearing upon what his intention may have been some time later. Thereafter, the court may have reasoned, notwithstanding the provision made for the wife by will, the husband had now concluded that, as to the money in the bank at least, he wanted to make different disposition and moreover, he wanted to avoid, if possible, any delay and expense of her having to carry such funds through probate court in order to get the benefit thereof.

The testimony going to the husband's deep concern as to how easily and quickly his surviving wife could have for her use the money in the bank in case of him predeceasing her, amply supports the theory that the husband quite properly may have given consideration to the provisions of his will when he opened the joint account or, he may have forgotten or may not have been concerned about such will.

That question is not important. It is the intention of the owner of the funds at the time of making the deposit that controls.

■ We know that generally it is held to be not sufficient to show simply the opening of a joint account in the name of one person "and" another, "or" another, without more, in order to establish a gift or a trust. Jones v. Fullbright et al., 197 N.C. 274, 148 S.E. 229; see other cases cited in 48 A.L.R. 191.

But, if there be substantial evidence from which the intention of the parties may be ascertained, and it is the intention to make a gift, create a joint estate, or set up a trust, then this action does accomplish such results. Ball v. Mercantile Trust Co., 220 Mo.App. 1165, 297 S.W. 415; Mississippi Valley Trust Co. v. Smith, 320 Mo. 989, 9 S.W.2d 58; Burns v. Nolette, 83 N.H. 489, 144 A. 848, 67 A.L.R. 1051; Commercial Trust Co. v. White, 99 N.J.Eq. 119, 132 A. 761; In re Lee's Adm'r, 132 Misc. 570, 230 N.Y.S. 558; In re Johnson's Estate, 116 Neb. 686, 218 N.W. 739; and

numerous cases cited in annotation in 48 A.L.R. 199 and 66 A.L.R. 888.

Many of the courts distinguish such cases from ones where the donee has no beneficial interest in such deposit until after the death of the donor depositor, and, in this latter class of cases, such attempts to create a gift by such deposits are generally declared invalid. Garland's Appeal, 126 Me. 84, 136 A. 459, certiorari denied in 274 U.S. 759, 47 S.Ct. 769, 71 L.Ed. 1338; McGillivary v. First Nat. Bank, 56 N.D. 152, 217 N.W. 150; Clark v. Bridges, 163 Ga. 542, 136 S.E. 444. However, such is not the situation presented in the case at bar.

■ As was well reasoned in the case of Burns v. Nolette, supra, the unlimited right of one of the parties to draw upon the account was always present until defeated by the death of the other party; and, the retention of a right to draw upon the account during his life time did not defeat the gift, because the donee's right vested at once and was not increased upon the donor's death; that the effect of his death was simply to remove the power of the donor to defeat the donee's right by himself withdrawing the deposit.

The court in that case further pointed out that there was no more reason for holding such a gift bad than there would be in the quite analogous case of a deposit by a third person to an account payable to two persons with the provision that the balance left upon the death of either of the two should be payable to the survivor.

"It is well established that a bank account may be so created that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other. The right to make such deposits has generally been held not to be done away with by statute abolishing joint tenancy and survivorship generally, as they existed at common law." 7 Am.Jur. 299-300, Par. 425, citing Erwin v. Felter, 283 Ill. 36, 119 N.E. 926, L.R.A. 1918E, 776; Malone v. Sullivan, 136 Kan. 193, 14 P.2d 647, 85 A.L.R. 275.

■ In creating a joint bank account with right of survivorship, it is of no importance that the particular terms "joint ownership" and "joint account" are used; but the controlling question seems to be whether the person opening the account intentionally and intelligently created a condition embracing the essentials of joint ownership and survivorship. No one formula is set up as controlling or required; the courts are controlled not by the name given the relationship or estate, but by the substance of the transaction. See Miller v. American Bank & Trust Co., 71 Colo. 346, 206 P. 796; Kelly v. Beers, 194 N.Y. 49, 86 N.E. 980, 128 Am.St.Rep. 543; Holt v. Bayles, 85 Utah 364, 39 P.2d 715.

It is enough that it was intended to create the estate by which the survivor should have the remainder of the money to which both had access and from which both could draw for use during their lifetimes, and that no rule of law or statute be violated.

New Jersey Title Guaranty & Trust Co. v. Archibald, 91 N.J.Eq. 82, 108 A. 434.

The case of Kelly v. Beers, supra, is somewhat in point. In that case the court observes that the rule to the effect that the possibility of so fixing a bank account that two persons shall be joint owners thereof during their mutual lives and the survivor take upon the death of the other is so well established that it need not be discussed.

Some cases rest upon the theory that the right of either depositor is not founded upon a gift either at the time of the deposit or at the time of the depositor's death, but is rather to be considered as a chose in action created against the bank by a contract with the bank. See Battles v. Milbury Savings Bank, 250 Mass. 180, 145 N.E. 55.

Some few cases hold that the mere fact a joint account is opened by the donor without any further explanation indicates an intention to make a gift. See L.R.A. 1917C, 556, note 20 citing cases. It may not be said however, that this is the general rule.

A brief but helpful discussion of the question before us may be found in Zollmann on Banks and Banking, permanent edition, 1936, Vol. 5, § 3227, where the author said:

"One great purpose in creating joint deposits, particularly in connection with savings banks, is to create a survivorship in the surviving depositor and eliminate the necessity of formal probate proceedings.

"It is a well settled rule that, where a written instrument is executed by husband and wife, upon opening an account with a bank, to the effect that the deposit when made and all accumulations thereof shall be held by them as joint tenants with the right of survivorship, each is seized of the whole estate from the creation of the tenancy, and the whole vests in the survivor without regard to the prior ownership or title to the property. .

"Various legislatures have favored such a purpose to the extent of passing statutes expressly authorizing such deposits. The presumption created by a survivorship statute is sufficient to establish title to the deposit in the survivor."

. Hoboken Bank for Savings v. Schwoon, 62 N.J.Eq. 503, 50 A. 490, 492, disposes of the argument that the power of disposition of the deposit remained in the donor during his lifetime, by saying: "This circumstance has not deterred the courts from giving effect to such arrangements. This has been done on two grounds: First, that a joint estate or interest is created, with an express right of survivorship, which operates naturally and legally upon whatever of the fund remains unused at the death of the donor; and, second, on the ground of a completed trust."

■ The purpose to create a joint deposit is particularly apparent where the deposit is made by husband or wife. The

intent to create survivorship rights is more easily found under such circumstances than under any other. See West v. McCullough, 123 App.Div. 846, 108 N.Y.S. 493, 496, affirmed in 194 N.Y. 518, 87 N.E. 1130; In re Reynolds' Estate, Sur., 163 N.Y.S. 803.

Since a husband at common law could not benefit his wife by putting a deposit in their joint names so far as immediate enjoyment is concerned, the court in the case of West v. McCullough, supra, reasoned, because he had the right to reduce even her own choses in action to possession, it was concluded that he intended to benefit her by giving her the right of survivorship. Else his action would have been utterly futile.

The court In re Reynolds' Estate, supra, states that where an account is opened in the name of two persons who are not husband and wife, there would be a fair presumption that it was opened as a matter of convenience merely, but holding this presumption not conclusive and one that would yield to evidence of an intent to create a survivorship.

There was sufficient evidence in the case at bar to support the court's findings of fact that the deceased husband put his money into the bank with the intention, well understood, and acquiesced in by the bank, that in case of his death his wife as survivor, would take it all, as indeed under the arrangements and the conditions of the deposit as in the form of a joint account, either she or he had the right to take a part or all while they both lived. We think it does not become important that there was no written contract between themselves or with the bank covering the point, so long as the understanding and intention of the donor, the husband, may be ascertained.

It does not become important to determine whether the court based its conclusions of law and judgment upon the theory of a trust, a joint tenancy or a gift to the wife, for if any one of the theories be good the objections urged are without merit and the judgment should be affirmed.

Thus finding no error the judgment will be affirmed, and, it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.