No. 41,628

LAOLA CARSON, Executrix of the Will of W. O. Ellis, Deceased, *Appellee,* v. JUANITA I. ELLIS, *Appellant.*

(348 P. 2d 807)

Opinion filed January 23, 1960.

*Thomas E. Gleason* and *Jules V. Doty,* both of Ottawa, argued the cause, and *Douglas Gleason,* of Ottawa, and *Hollis B. Logan,* of Topeka, were with them on the briefs for the appellant.

*William L. Rees,* of Topeka, argued the cause, and *Hall Smith* and *Wright W. Crummett,* both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by the executrix, plaintiff (appellee), of the will of W. O. Ellis, deceased, against Juanita I. Ellis, defendant (appellant), former wife of deceased, to recover

one-half interest in certain real estate, hereinafter referred to as a duplex, alleged to have been the property of W. O. Ellis at the time of his death, and for partition of the property. From a judgment for plaintiff, defendant appeals.

On November 1, 1944, Juanita I. Ellis and W. O. Ellis purchased a two-story duplex, the property in question. It was arranged to accommodate two apartments known as the east half and the west half. They took title to the property in the names of W. O. Ellis and Juanita I. Ellis, as joint tenants with right of survivorship and not as tenants in common. In 1951, Juanita sought a divorce from Mr. Ellis. Both were represented by counsel, and in order to eliminate possible questions concerning division of their property, Juanita and Mr. Ellis, on November 8, 1951, entered into a written property settlement agreement providing for the disposition of the property, which reads in part as follows:

"It is therefore agreed by and between the parties hereto that in the event either party to this Agreement obtains a divorce then the following shall be the division of the real and personal property owned by the parties, subject to the approval of the Court, it being the intention of the parties to make a fair, just and equitable settlement of the respective property rights of the parties to avoid further litigation over the same."

The contract further provided for the appraisal of the property for the purpose of an equal division of the value thereof between the parties, for the payment of court costs and attorney fees in a divorce action out of the proceeds received from the sale of the property, and for payment of $1,000 to Juanita by Mr. Ellis out of his half of the proceeds received. It further provided that Juanita was to have an option to buy for cash at the appraised value Mr. Ellis' undivided one-half interest in the property, and in the event she was unable to purchase such interest the property was to be sold to the highest bidder. In either event, the sale was to be made within sixty days from the date of the divorce decree.

On the following day, November 9, Juanita was granted a divorce from Mr. Ellis, and the trial court, in making a division of the property of the parties in accordance with the provisions of G. S. 1949, 60-1511, incorporated and merged the aforementioned property settlement agreement in its judgment, which reads in part as follows:

". . . that the real estate of the parties, the legal description of which is as follows: [property in question described] shall be appraised by three appraisers; that the appraised value shall be the value placed on said property

for the purpose of division between the parties and that the proceeds from the sale of said property at or above the appraised value shall be divided equally between the parties and out of the proceeds of the sale of said property the court costs, attorney fees and all expenses of the sale shall be paid. The defendant [Mr. Ellis] is hereby ordered to pay to the plaintiff the sum of $1,000.00 out of one-half of the proceeds to be received by him; that the plaintiff be and she is hereby given an option to buy the undivided one-half interest of the defendant for cash at its appraised value, said real estate to be either purchased by the plaintiff or sold at the highest price within sixty days from the date of this decree."

At the end of the sixty-day period provided for in the property settlement agreement and in the decree of the court, Juanita and Mr. Ellis entered into another agreement on January 9, 1952, in which it was recited that the parties were divorced November 9, 1951, that Juanita had not purchased the property pursuant to the option granted her in the divorce decree and that Juanita and W. O. Ellis were desirous of selling the property for the sum of $20,000 net and dividing the proceeds at a later date in accordance with the terms of the decree which pertained to the property settlement agreement. It further provided:

". . . that William O. Ellis, until said property is sold, shall have the right to occupy the West one-half of said real estate, and Juanita I. Ellis shall occupy the East one-half, and each shall receive all proceeds received therefrom. Taxes shall be paid and borne equally by the parties. Each shall pay their own utility bills and upkeep of the interior of said property. Any repairs necessary on the exterior of the property shall be borne equally by the parties. The parties agree that in the event a buyer is obtained for the sum of $20,000.00 net each party agrees with the other that they will execute the necessary conveyances for the transfer of the property and will sell for $20,000.00 net if either or both of the parties so desire to sell. Each agrees to give the purchaser possession as soon as possible under the law and within a reasonable time not exceeding 60 days. . . ."

Subsequent to the execution of this instrument, the parties occupied their respective halves of the duplex, Mr. Ellis living in, maintaining and collecting the rents on the west half and Juanita living in, maintaining and collecting the rents on the east half. In 1955, Mr. Ellis executed his will, leaving his property to his two daughters. He died in 1957 before any sale of the duplex was made. His will was admitted to probate and Laola Carson, a daughter, plaintiff in this action, was appointed executrix thereof.

Plaintiff contends that the contract of November 8, 1951, the decree of divorce of November 9 and the subsequent contract of January 9, 1952 each and all operated to sever the joint tenancy,

and that the estate of W. O. Ellis was entitled to an undivided one-half interest in and to the property. Defendant Juanita Ellis maintains that the property remained in joint tenancy until it was sold and there could have been no severance of the joint tenancy until such event occurred; that she was therefore entitled to the entire property by virtue of her right of survivorship. The trial court found that plaintiff and defendant were each the owner, as tenant in common, of an undivided one-half interest in and to the property in question, and entered judgment accordingly.

The four essential elements of a joint tenancy are unity of interest, title, time and possession. To meet the requirements, the several tenants must have one and the same interest accruing by one and the same conveyance commencing at the same time and held by one and the same undivided possession. (48 C. J. S. Joint Tenancy § 3c., p. 916; 14 Am. Jur., Cotenancy, § 7, p. 81; Tiffany on Real Property [3d Ed.], Vol. 2, § 418, p. 196.) A joint tenancy will be severed by the destruction of any one or more of its necessary units. (Tiffany on Real Property [3d Ed.], Vol. 2, § 425.)

It has also been held that a joint tenancy may be terminated by a mutual agreement between the parties (*In re Estate of Biege,* 183 Kan. 352, 356, 327 P. 2d 872; *Berry v. Berry,* 168 Kan. 253, 256, 212 P. 2d 283), or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common. (*Berry v. Berry,* supra; 48 C. J. S. Joint Tenancy § 4, p. 928; Tiffany on Real Property [3d Ed.], Vol. 2, § 425; Freeman on Cotenancy & Partition [2d Ed.], § 31, p. 83.)

An analysis of the two contracts entered into between the parties clearly reveals it was their intent to sever the joint tenancy. The first contract indicated their intention to make a fair, just and equitable settlement of their property in contemplation of divorce and thus avoid future litigation. It provided for the appraisement and the sale of the property and the division of the proceeds between the parties. The second contract contained the same provisions and further provided that each party should occupy his or her respective half of the duplex and receive any income therefrom, each to pay his or her utility bills and upkeep thereon, pending the sale of the property in accordance with the decree of divorce. The contracts and the actions of the parties obviously destroyed the unity of possession. These contracts and the acts

and conduct of the parties were clearly inconsistent with the existence of a joint tenancy and indicated an intention and agreement that such relationship should no longer exist. A case somewhat analogous to the instant case is *McDonald v. Morley,* 15 Cal. (2d) 409, 101 P. 2d 690, 129 A. L. R. 810.

Defendant relies on *In re Estate of Biege,* supra. However, in certain respects this case is distinguishable from the instant case. There the property was sold on a contract and the payments of the contract were placed in a joint bank account. We said that the proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired, and that a change in the character of the property does not affect the relationship of joint tenancy, unless intent to do so is so manifested. We further said it would appear that in view of our statute a joint tenancy is severed only in the manner in which it was created; *i. e.,* by the clear intent of the parties. The distinction between the Biege case and this case is that in the Biege case the proceeds went into a joint bank account—the intent was obvious. In the instant case, each party took possession and full control over his or her respective half interest in the property, and inherent in the court's judgment was a finding that it was the intent of the parties to divide their property and sever the joint tenancy, and that they so acted in accordance therewith.

Did the decree of divorce sever the joint tenancy? G. S. 1949, 60-1511 provides, in part, that when a decree of divorce is granted to the wife by reason of the fault of the husband, the court *shall make a division* of the real and personal property as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of the parties. It is clear that the object of the statute, in case a divorce is granted, is to settle all rights between the parties and sever the interests of the husband and the wife so as to vest in each a sole interest in specific property or an allotment of the lands and tenements. The divorce decree has the effect of severing the unity of possession between a husband and wife. In other words, that which was a joint possession is turned into a several one. The decree of divorce definitely fixed the rights of the parties in the real estate by ordering the property sold and the proceeds divided in accordance with the decree. It was a final judgment from which no appeal was taken. The fact

that sale of the property had not been made prior to the death of Mr. Ellis is immaterial. The decree operated to sever the unity of possession.

Other questions have not been overlooked but have been considered and found without substantial merit. The judgment of the trial court is affirmed.

It is so ordered.