No. 42,094

MILDRED E. BAADE, aka MILDRED E. WILSON, Plaintiff and *Appellee,* v. PAYNE H. RATNER, Executor of the Estate of W. H. Wilson, also known as William H. Wilson, Deceased, Defendant and *Appellant,* and WICHITA FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation, Defendant and *Appellee.*

(359 P. 2d 877)

Opinion filed March 4, 1961.

James R. Barr, of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Cliff W. Ratner, Edmund R. Learned, Frank W. Hylton* and *R. R. Barnes,* all of Wichita, were with him on the briefs for the appellant.

Kenneth M. Nohe, of Wichita, argued the cause, and *Dale Kidwell, George W. Ball* and *Jack H. Greene,* of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: This action was commenced by the appellee, an alleged surviving joint tenant, to obtain from the Wichita Federal Savings and Loan Association, hereafter referred to as the Savings Association, the funds on deposit in a savings account, which account was also claimed by the appellant, Payne H. Ratner, as executor of the estate of W. H. Wilson, deceased.

The case was tried by the court upon the pleadings and a written stipulation of facts which, so far as here pertinent, revealed the following: The appellee, Mildred E. Baade, hereafter referred to as Mildred Wilson, and W. H. Wilson, the deceased, were married on March 26, 1948. On November 4, 1955, a joint savings account was opened by W. H. Wilson and Mildred Wilson at the Savings Association entitled "Wilson, W. H. or Wilson, Mildred, as joint tenants with the right of survivorship and not as tenants in common," and $1,000 was deposited in the account. No further deposits were made by the parties during their marriage.

In 1956 W. H. Wilson filed suit for a divorce from Mildred Wilson in the district court of Sedgwick County. The case was heard on September 21, 1956, and counsel for the parties announced in open court that they had voluntarily settled their property rights and obligations, and the case would be a default. W. H. Wilson withdrew his petition and Mildred Wilson was awarded the divorce on her cross-petition.

The real and personal property of the parties was divided by the court in accordance with their property settlement. Insofar as here pertinent, the journal entry of judgment and decree of divorce, after setting aside to Mildred Wilson as her sole and separate property, free and clear from all claim of W. H. Wilson, the home and furniture of the parties, a 1956 automobile and certain other personal property, awarded the plaintiff, W. H. Wilson, as his sole and separate property, free and clear from all claim of Mildred Wilson, the personal property of the parties hereafter referred to.

On December 14, 1956, approximately three months after the defendant was awarded the divorce, a deposit of $2,000 was made in the savings account, but the record does not disclose who made the deposit. However, the record affirmatively discloses that Mildred Wilson made no deposits in the account after the divorce.

W. H. Wilson died on September 27, 1957, leaving a balance in

the savings account of $3,127.11, representing $3,000 in deposits and $127.11 accumulated dividends. Title to the account had never been changed from "Wilson, W. H. or Wilson, Mildred, as joint tenants with the right of survivorship and not as tenants in common."

On January 24, 1958, Mildred Wilson made demand upon the Savings Association for withdrawal of the entire balance in the account, and upon its refusal to pay, commenced this action against the Savings Association and Payne H. Ratner, as executor. In its answer the Savings Association alleged that it did not know whether Mildred Wilson, as joint tenant, was the owner, or whether Payne H. Ratner, as executor, was entitled to the account, and offered to pay the said amount into court and abide its order.

Following trial, the district court found in favor of Mildred Wilson and entered judgment that she was the owner of the balance in the account in the sum of $3,127.11. Payne H. Ratner, as executor, perfected this appeal and is hereafter referred to as the appellant.

The sole question presented is whether the journal entry of judgment and the decree of divorce had the effect of destroying the joint tenancy in the savings account and any right of survivorship incident thereto as to Mildred Wilson.

At the outset it may be stated that the appellee concedes the district court erred in not awarding the appellant the sum of $1,000, the amount in the account at the time of the divorce, because, as the appellee contends, the divorce decree specifically awarded that sum to W. H. Wilson and the joint tenancy as to that amount was terminated by the parties' property settlement which was merged in the decree of divorce. However, the appellee cites G. S. 1949, 60-1511, and argues that the court's decree could only sever the joint tenancy as to the $1,000, but that it had no power or authority to sever the joint tenancy as to the $2,000 deposit made after the divorce, which was property not acquired by the parties jointly during their marriage. She further argues that since the title to the savings account was not changed, and because there was no evidence in the record as to the intent of the depositor when the $2,000 deposit was made, the form of the deposit must control, and as surviving joint tenant, she is entitled to the $2,000 deposit plus the accumulated dividends. She cites and relies upon *In re Edwards' Estate*, 140 Ore. 431, 14 P. 2d 274.

The instant case is largely governed by the recent decision of this

court in *Carson, Executrix, v. Ellis,* 186 Kan. 112, 348 P. 2d 807. That case also involved the effect to be given to a divorce decree which incorporated a voluntary division of property acquired by the parties jointly during their marriage. The property settlement provided, in part, that a duplex owned by them as joint tenants with right of survivorship, should be sold within 60 days after the divorce, the parties each to receive one-half of the proceeds. Subsequent to the divorce, the parties entered into another contract stating their desire to sell the property for $20,000 and divide the proceeds in accordance with the divorce decree. The contract provided that until the property was sold the husband would occupy the west half of the duplex and the wife would occupy the east half, each receiving the rents therefrom and each paying their utility bills and upkeep on the interior, and the cost of all repairs made to the exterior was to be borne equally. The husband died before the property was sold and his heirs claimed his half of the duplex, alleging that the property settlement, the divorce decree, and the later contract between the parties all operated to sever the joint tenancy. The wife claimed the whole property, as surviving joint tenant, alleging that until the property was sold there could be no severance of the joint tenancy. In holding that the joint tenancy was severed, we said:

". . . A joint tenancy will be severed by the destruction of any one or more of its necessary units. (Tiffany on Real Propertey [3d Ed.], Vol. 2, § 425.)

"It has also been held that a joint tenancy may be terminated by a mutual agreement between the parties (*In re Estate of Biege,* 183 Kan. 352, 356, 357 P. 2d 872; *Berry v. Berry,* 168 Kan. 253, 256, 212 P. 2d 283), or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common. (*Berry v. Berry,* supra, 48 C. J. S. Joint Tenancy, § 4, p. 928; Tiffany on Real Property [3d Ed.], Vol. 2, § 425; Freeman on Cotenancy & Partition [2d Ed.], § 31, p. 83.)

"An analysis of the two contracts entered into between the parties clearly reveals it was their intent to sever the joint tenancy. . . . The contracts and the actions of the parties obviously destroyed the unity of possession. These contracts and the acts and conduct of the parties were clearly inconsistent with the existence of a joint tenancy and indicated an intention and agreement that such relationship should no longer exist. . . ." (l. c. 115, 116.)

As in the Carson case, *supra,* an analysis of the property settlement contract entered into between the parties in the instant case clearly reveals it was their intention to sever the joint tenancy. The property settlement contract provided, in part, that the plaintiff, W. H. Wilson "shall be given the savings account in the amount of

$1,000.00 at the Wichita Federal Savings and Loan Association, which, if necessary, the defendant agrees to convey to him." The fact that Mildred Wilson agreed to convey the account to W. H. Wilson, if necessary, clearly reveals that it was the parties' intention to sever the joint tenancy of the savings account, not merely the balance. As to the effect of the divorce decree upon the joint tenancy in the Carson case, *supra*, it was said:

"Did the decree of divorce sever the joint tenancy? G. S. 1949, 60-1511 provides, in part, that when a decree of divorce is granted to the wife by reason of the fault of the husband, the court *shall make a division* of the real and personal property as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of the parties. It is clear that the object of the statute, in case a divorce is granted, is to settle all rights between the parties and sever the interests of the husband and the wife so as to vest in each a sole interest in specific property or an allotment of the lands and tenements. The divorce decree has the effect of severing the unity of possession between a husband and wife. In other words, that which was a joint possession is turned into a several one. The decree of divorce definitely fixed the rights of the parties in the real estate by ordering the property sold and the proceeds divided in accordance with the decree. . . ." (l. c. 116.)

Just as the divorce decree definitely fixed the rights of the parties in the real estate in the Carson case, *supra*, the divorce decree fixed the rights of the parties in the account at the Savings Association. The decree provided that the plaintiff (W. H. Wilson) be given as his sole and separate property, free and clear of all claim of the defendant thereto, 161 shares of stock then standing in his name and 49 shares of stock standing in the name of the defendant, and that she forthwith assign such stock to the plaintiff, and that the plaintiff,

". . . is hereby given the $4,000.00 worth of bonds now in his possession, and one 1950 Ford autombile and $1,000.00 savings account at the Wichita Federal Savings and Loan Association, and the defendant is ordered, if necessary, to assign said savings account to the plaintiff if it stands in her name. . . . *And the defendant is hereby forever barred from claiming or asserting any right, title, or interest therein.*" (Emphasis supplied.)

By the very language of the divorce decree there can be no question but that the court intended to dissolve the marital relation between the parties and settle and adjust all their property rights, hereby severing the unity of possession between them. Under G. S. 1949, 60-1511, the court had that power and its decree of divorce vested sole ownership of the savings account in W. H. Wilson. Among other things, the divorce decree was directed to the savings

account, which was personal property (*In re Estate of Fast,* 169 Kan. 238, 218 P. 2d 184), and it severed the joint tenancy relationship in the account itself, not merely in the balance at the time of the divorce.

The fact that Mildred Wilson never assigned the account to W. H. Wilson does not operate to keep the account a joint one. The contract between the parties and the decree of divorce not only severed the joint tenancy, but forever barred the appellee from claiming or asserting any right, title, or interest in the account. That, in itself, would preclude the instant action.

The judgment of the district court is reversed with direction to enter judgment in favor of Payne H. Ratner, executor of the estate of W. H. Wilson, deceased.

It is so ordered.

PRICE, J., dissents from the third paragraph of the syllabus and the corresponding portion of the opinion.