498 P.2d 305

Americo ROMERO, Administrator of the Estate of Pedro R. Melendez, Deceased, Plaintiff-Appellee,

v.

Celene M. MELENDEZ, Defendant-Appellant.

No. 9375.

Supreme Court of New Mexico.

June 16, 1972.

Sommer, Lawler & Scheuer, Santa Fe, for appellant.

Matias L. Chacon, Espanola, Anthony J. Albert, Santa Fe, for appellee.

## OPINION

McMANUS, Justice.

This case was brought in Rio Arriba County requesting a determination that certain life insurance policies, a mutual fund, a savings account and a checking account were the property of the estate of Pedro R. Melendez. The answer of the defendant-appellant, Celene Melendez, denied ownership by the estate and asserted a counterclaim to recover the amount of a savings account withdrawn by the plaintiff-appellee, Americo Romero, administrator of the estate. The cause was tried to

the court without a jury and judgment was entered for the plaintiff; counterclaim of the defendant was denied. This appeal is from that judgment.

The decedent, Pedro Melendez, and the appellant were married on May 26, 1956. They were divorced on October 2, 1970, in Rio Arriba County. The decedent went into a coma on December 3, 1970, and died intestate December 13, 1970. This dispute arose over the determination of ownership of insurance policies and accounts that had been awarded the decedent as his sole and separate property by the divorce.

The divorce decree awarded the decedent:

(a) two insurance policies which named the appellant as the sole beneficiary;

(b) a Keogh plan fund with appellant as beneficiary.

(c) a Financial Industrial Fund Certificate which had been held in joint tenancy with the appellant;

(d) a Los Alamos Building and Loan Association savings account which was payable on death to the appellant and from which the appellee drew money after the decedent's death;

(e) a checking account in the First National Bank of Rio Arriba held in joint tenancy with the appellant and payable on death to a third party. (This account was withdrawn by the defendant after the divorce and prior to the death of Mr. Melendez.)

There was evidence to the effect that the decedent and the appellant had contemplated remarriage around Christmas of 1970. The appellant also requested findings of fact to the effect that the decedent had ample time between the divorce and his death to change the beneficiary under the insurance policies, to change the joint tenancies to his name alone, and to eliminate the names of the appellant and a third party from the payable upon death provisions and that the reason he did not so act was his intention to remarry the appellant.

These findings were refused by the court below.

The appellant argues two points to this Court. The first is that:

"The finding that the stipulation and agreement and divorce decree severed the joint tenancy, that decedent did not do anything to make a gift to defendant of assets received in the divorce, is not supported by the evidence. The evidence supported the findings requested by defendant and refused by the trial court, and was uncontradicted and unimpeached."

The second point states:

"Where ownership of a life insurance policy, joint property, or payable on death account is awarded by a divorce decree to a husband and the husband has the opportunity to, but does not, change the joint tenancy, life insurance beneficiary, or payable on death provision, upon his death the surviving ex-wife is entitled to the joint tenancy property, life insurance proceeds, and payable on death account."

In spite of these arguments appellant conceded during oral argument that all interests of the appellant were terminated by the provisions contained in the divorce decree.

Points I and II can be resolved together since the conclusion of both is dependent upon the interpretation of the divorce decree. The final decree, filed on October 2, 1970, made the following distribution of the community property:

"3. Of the community property set forth in Paragraph 4 of the findings of fact, defendant is hereby awarded as his sole and separate property:

"* * *

"(7) Insurance (life) of defendant (two policies)

"(8) Keogh plan fund

"(9) FIF mutual fund

"(10) Los Alamos Building & Loan Association (savings account)

"(11) Checking account

" * * *."

Other property was awarded to the decedent as well as to the appellant but only the prior listed items are in dispute. Appellant claims she is entitled to the benefits of the insurance policies since the decedent made no effort to change the beneficiary and, in fact, wished to remarry appellant, alleging that this is indicative of an intent to retain the appellant as the beneficiary. She also claims she is entitled to the money under the Keogh plan since she was the named beneficiary. Appellant also claims that she takes the FIF mutual fund by virtue of the fact that she and decedent held the fund as joint tenants prior to the divorce and, as well, claims the savings account under the payable upon death provision, and the checking account as the survivor of the joint tenancy.

The joint tenancy issue can be disposed of first. In the case of Carson v. Ellis, 186 Kan. 112, 348 P.2d 807 (1960), joint tenancy was defined as follows:

"The four essential elements of a joint tenancy are unity of interest, title, time and possession. To meet these requirements, the several tenants must have one and the same interest accruing by one and the same conveyance commencing at the same time and held by one and the same undivided possession. * * * A joint tenancy will be severed by the destruction of any one or more of its necessary units. * * *

" * * * [A] joint tenancy may be terminated by a mutual agreement between the parties * * *, or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common. * * *."

This case was followed in Baade v. Ratner, 187 Kan. 741, 359 P.2d 877 (1961), which closely parallels the case before us. In Baade, supra, the divorced wife sued the executor of the divorced husband's estate to recover the balance of an account held in joint tenancy prior to the divorce.

The divorce decree awarded to the husband, as his sole and separate property, 161 shares of stock in his name, 49 shares of stock in the wife's name to be assigned to the husband, $4,000.00 worth of bonds in possession of the husband, and a $1,000 savings account with an order to the wife to assign such account to the husband if it stood in her name. The decree also barred the wife from claiming or asserting any right, title, or interest in the above described property. At the husband's death, there was over $3,000 in the savings account and the wife's name was still on the account as a joint tenant. In resolving the issue of ownership in favor of the husband's estate, the court said:

"By the very language of the divorce decree there can be no question but that the court intended to dissolve the marital relation between the parties and settle and adjust all their property rights, thereby severing the unity of possession between them. * * * Among other things, the divorce decree was directed to the savings account, which was personal property * * *, and it severed the joint tenancy relationship in the account itself, * * *.

"The fact that Mildred Wilson never assigned the account to W. H. Wilson does not operate to keep the account a joint one. The contract between the parties and the decree of divorce not only severed the joint tenancy, but forever barred the appellee from claiming or asserting any right, title, or interest in the account. That, in itself, would preclude the instant action."

The divorce decree in this cause gave the decedent the Financial Industrial Fund Certificate and the checking account as his sole and separate property. That decree severed and dissolved the joint tenancy. The appellant has no claim to either fund since her rights had been settled by the divorce decree. The moneys in both the Financial Industrial Fund and the checking account belong to the estate. See also Prichard v. Carter, 208 Tenn. 648, 348

S.W.2d 306 (1961) and Smith v. Smith, 460 S.W.2d 204 (Tex.Civ.App.1970) where the Texas court observed:

"\* \* \* [T]he value of the retirement fund was adjudicated in the divorce case \* \* \*. Furthermore the divorce judgment expressly decreed that the retirement fund should thenceforth be separate property of appellant. It was not necessary for appellee thereafter to indicate her willingness 'to release her rights in the retirement fund.' \* \* \*"

■ The issue concerning the life insurance policies and the Keogh fund must also be resolved in favor of the appellee. The general rule has been stated in O'Brien v. Elder, 250 F.2d 275 (5th Cir. 1957):

"It is generally true that divorce alone does not automatically divest the wife of the proceeds of life insurance in which she is the named beneficiary \* \* \*. The beneficiary's interest may be terminated, however, by an agreement between the parties which may reasonably be construed as a relinquishment of the spouse's rights to the insurance \* \* \*."

■ The weight of competent authority seems to support the proposition that where the divorce decree makes a definite disposition of the insurance policies, the wife's interest as a beneficiary can be defeated by such disposition. See, in particular, Brewer v. Brewer, 239 Ark. 614, 390 S.W.2d 630 (1965), where the Arkansas Supreme Court affirmed the rule that a divorced wife cannot claim as a beneficiary under a life insurance policy that she specifically transferred and released under the property settlement incorporated in the divorce decree. Also, Dudley v. Franklin Life Insurance Co., 250 Or. 51, 440 P.2d 363 (1968), which interpreted California law in this area. Other cases holding conversely to do so on the basis of the absence of a clear divorce decree. See Partin v. de Cordova, 464 S.W.2d 956 (Tex.Civ.App. 1971).

Three New Mexico cases will now be discussed and distinguished from the case now before us.

The first case is Menger v. Otero County State Bank, 44 N.M. 82, 98 P.2d 834 (1940), where the deceased husband opened a joint account out of his separate funds with the right of both parties to withdraw from the account on their individual signature during their lifetimes. Upon the wife's death, the administrator of the deceased husband's estate sought to have the defendant bank pay over the unexpended funds in the account for the benefit of the husband's estate. The court held that the funds had been held in joint tenancy and upon the husband's death became the separate property of the wife rather than giving her a life estate in the account as alleged by the administrator. The court stated:

"There was sufficient evidence in the case at bar to support the court's findings of fact that the deceased husband put his money into the bank with the intention, well understood, and acquiesced in by the bank, that in case of his death his wife as survivor, would take it all; \* \* \*."

In the present case there is no such evidence. In fact, the conclusion must be to the contrary. The divorce decree dissolved the joint tenancy and vested the ownership of the accounts solely in the decedent. He made no effort to reinstate the appellant as the survivor of the accounts. Inaction cannot be considered an affirmative effort since the decree operates to destroy the joint tenancy by eliminating the unity of possession. There is no correlation between Menger, supra, and the ease at bar; on the contrary, the evidence supported the finding of joint tenancy in Menger while in the case before us, the evidence supported the contrary finding that the joint tenancy no longer existed.

The second case, Kinney v. Ewing, 83 N.M. 365, 492 P.2d 636 (1972), arose over the ownership of securities registered in

the names of the mother-appellee and the daughter-appellant. Appellee had purchased the certificates upon the death of her husband and placed them in joint tenancy with right of survivorship to protect the then minor appellant. The case arose when appellee sought a declaratory judgment regarding the rights of the parties with respect to the jointly held securities. The court below found the appellee to be the sole and separate owner of the securities and, on appeal here, we stated:

"With respect to the Securities, the [trial] court found the facts to be generally as we have stated them. Most importantly, it also found: (1) that due to plaintiff's exclusive dealings with the Securities, there was no delivery of them from plaintiff to defendant; and (2) that the registration of the Securities by plaintiff in joint tenancy did not manifest any intention on her part to make a present gift to defendant, but only indicated her intention to have the Securities pass to defendant upon plaintiff's death. * * *."

The main question that this Court considered there was whether or not there was a valid gift made and completed and we concluded there was not. There was a lack of donative intent necessary for a present gift.

In the present case, the appellant wife has made the argument that she takes the joint accounts under right of survivorship. We have already established that this is not the case. Had she made the argument that decedent intended a gift by failing to remove her from the accounts then the Kinney, supra, reasoning would be applicable and the solution would depend on the existence or lack of substantial evidence going to the presence or absence of the elements necessary for a valid complete gift. As the case now stands, there is no evidence of a gift; therefore, the prior reasoning as to the dissolution of the joint tenancy by the decree holds and controls.

Harris v. Harris, 83 N.M. 441, 493 P.2d 407 (1972), is the third case that must be distinguished. There the divorced wife was allowed to receive the entire benefits of two insurance policies on her former husband's life. The policies had not been disposed of by the divorce decree and since they had been held as community property before the divorce, the parties held them as tenants in common after the divorce. Since the wife owned one-half of the policies by virtue of the tenancy in common, she could collect under her one-half interest as a beneficiary. The deceased husband owned the other half of the policy and attached to that ownership was the right to retain or change the beneficiary. He chose not to change the beneficiary, therefore the wife was entitled to that half as well.

The law, as set down in Harris, supra, is quite clear on this point. Other jurisdictions quite clearly hold that where the insurance policy has been dealt with by the divorce decree, the ownership in the policy and the benefits therefrom reside in the party who takes the policy under the decree. See Brewer v. Brewer, and Dudley v. Franklin Life Insurance Co., both supra. The decree in this case gave the decedent the policies as his sole and separate property and divested the appellant of any and all interest, including the expectancy as a beneficiary. The distinction between this case and Harris, supra, is in the decree itself. In the case before us, the decree disposed of the policies; in Harris, supra, it did not.

The Los Alamos Building and Loan savings account with its payable on death provision must be disposed of in the same manner as the life insurance policies and the Keogh fund. The payable on death provision gave the appellant a beneficial interest similar to that accorded her under the insurance policies. Since the divorce decree disposed of the savings account in favor of the decedent, the appellant is precluded from claiming the account under the payable on death provision. The same reasoning that applies to the insurance policies also applies here.

See Brewer v. Brewer and Dudley v. Franklin Life Insurance Co., both supra.

Because of the foregoing, all of the items discussed in this opinion belong to the estate of Pedro R. Melendez, deceased. In addition, the money withdrawn from the First National Bank of Rio Arriba shall be returned to the estate by the defendant.

The judgment of the trial court is affirmed.

It is so ordered.

OMAN and STEPHENSON, JJ., concur.