## JOHN BRANDON v. MARY ANN BRANDON.

1. HOMESTEAD, *Where Parties are Divorced.* Upon granting a divorce, whether on account of the fault of the wife or the husband, the court has power to award to her the possession of the homestead.

2. DIVORCE; *Party in Fault; Custody of Children.* When the record shows that a divorce was granted on account of the habitual drunkenness of the wife, this court cannot hold that it was error to give to her the care and custody of two infant children, in the absence of any showing that the husband was a suitable person to have such care and custody.

*Error from Leavenworth District Court.*

JUDGMENT in favor of the plaintiff, decreeing a divorce on account of the fault of the defendant, was rendered at the February Term 1874 of the district court. The court also, by its orders, gave the defendant the homestead, and the custody of the children. From these orders the plaintiff appeals. All the facts are stated in the opinion.

*F. P. Fitzwilliam,* for plaintiff:

1. The court could not lawfully decree possession of the *homestead* to defendant during her natural life, and require plaintiff to vacate it. The marriage was dissolved, and all rights and obligations dependent on the existence of the marriage relation became extinguished. The parties are no longer husband and wife, but are permitted to marry at pleasure. The husband is released from all obligation to maintain the wife. Any inchoate right that she might otherwise possess, is at end upon the dissolution of the marriage. In this case the legal title was in plaintiff, and was procured by his own means. Defendant had an interest in it, by operation of law, and which could not be defeated without her consent during the existence of the marriage ralation. But as soon as a decree for a divorce *a vinculo matrimonii,* for the fault of the wife was made, it annulled any right she had in the homestead. He still remained the head of the family, (having two

adopted children and his aged mother with him,) occupying the homestead at the time of the dissolution of the marriage. Hence the court could not defeat the right of plaintiff to occupy the premises, nor could it create for plaintiff a different estate from that he had under the marriage relations, or limit the right of occupancy. Defendant's right to occupy the homestead was subordinate to his right. On the dissolution of the matrimonial union, defendant became *civiliter mortuus*. Were this not the case, then plaintiff could not dispose of the premises without the consent of defendant, although he should deem it for the best interest of himself and family to change his domicil. Were defendant to marry again, would not she and her second husband enjoy the occupancy of this homestead, under decree of the court, while plaintiff is driven by a new process of ejectment from the home the constitution of the state guarantees shall be exempt from forced sale on any process of law, and shall not be alienated without his consent? In case of plaintiff's death, what estate would his children inherit? In case of a second marriage of plaintiff, and of his death, what estate would his widow take? In case a judgment should be recovered against him, could this property be sold to satisfy the judgment? or, in the event he procured another home while the defendant was in occupancy of these premises, could the latter be sold under execution? Art. 15, § 9, Const.; 38 Ill., 10, 509; 33 Ill., 368.

The statute declares that on the court granting a divorce for the fault of defendant, it shall be a bar to any claim of such party in or to the property of the plaintiff. Civil code, § 647. The statute governs the rights of the parties, if not in conflict with any constitutional provision; 19 Ind., 37; for the court possesses no powers in actions for divorce, except such as are conferred by statute; 28 Wis., 367.

2. If the court possessed a "discretion" in the matter, was it the exercise of that "sound discretion" assured through an enlightened jurisprudence and advancing civilization, to give a life estate to defendant in the homestead of plaintiff—to give the care, nurture and education of the children to her—

to require plaintiff to pay to her $25 per month for her support, together with a requirement to surrender all the household property, after adjudging that defendant was an *habitual drunkard?* It is not often that a court is called on to review a decree like this one. It is not often that a court will assume to bestow the care and education of two infants to a drunken *wife-mother* — children whose little lives are as "chaste and pure as the unsunned snow," but who must in a few short years have their sunny childhood overshadowed by the withering influence of an inebriate mother. It is not often that the hopes and ambition of young manhood are forever darkened by the "demon cup," in the hands of one that was to be a wife to him, and a mother to his offspring. It is not often that the court is willing to say to the unoffending plaintiff, You are freed from the "accursed thing," but weary days of toil shall be your lot, to furnish the means to support defendant in debauchery.

The opinion of the court was delivered by

BREWER, J.: The facts in this case are as follows: The court below granted to plaintiff a divorce on account of the fault of defendant on the *charge of habitual drunkenness,* but awarded the defendant the care, custody, nurture and education of the two minor children of the said plaintiff and defendant, one, as appears by the allegations of the petition, three-and-a-half years old, and the other only one year old. The court further decreed that the defendant should have and retain the possession of the homestead of the plaintiff *during her natural life,* and that plaintiff should forthwith deliver possession of said premises to said defendant. The court further adjudged that plaintiff should pay as further alimony $25 per month, and that there should be allowed, assigned and set off to the defendant, to her own sole and separate property, all the clothing of herself and said two minor children, and *all the household and kitchen furniture* in said house, excepting two medium-sized bedsteads, and the bedding thereof, to be retained by the plaintiff; and then ad-

judged that the defendant have and recover of and from plaintiff the costs taxed at $204.97.

Upon this record two questions are presented. It is insisted in the first place, that "the court could not lawfully decree possession of the homestead to defendant during her natural life, and require plaintiff to vacate it." It appears that the title to the homestead was in plaintiff; and the argument is, that the defendant's interest in the homestead arises from her relation as wife to plaintiff; that when that relationship ceased, as it did by the decree of divorce, her rights and interest therein ceased, and the property remained as the absolute property of the husband; that it was his homestead, he remaining the head of a family, and that being his homestead he could not under the constitutional provisions be in this way forced to surrender it to any one. The argument is ingenious, and forcibly put by counsel in his brief; but we are constrained to say is not sound. The divorce, and the adjustment of property-interests, are not to be regarded as transpiring at different times, but as cotemporaneous. The homestead of the plaintiff is not given to a stranger, destitute of all interest and right therein, but the homestead of the husband and wife (for it is equally the homestead of each,) is, upon their separation, assigned to one of them. There would be manifest impropriety in attempting to continue it as the homestead of each after the divorce; and in awarding it to the wife the court is but choosing between conflicting interests. The fact that the title to the homestead-property is in the husband, does not give to him any greater interest in it as a homestead. His deed of it conveys no more than hers. He can no more incumber or alienate it by a direct proceeding than she. Perhaps by contracting for improvements thereon he may have more power than she to make it liable to judicial sale, though thus only indirectly does he affect it. That he has even this power greater than she, we do not now positively decide, leaving the question to be examined and decided whenever it is fairly before us. But whatever he may do, directly or indirectly, affecting the title, in so far as it is a

23 —14 KAS.

homestead it is the homestead of each, and upon a divorce the court has power to assign it to either. The statute expressly gives to the court the power in case of a divorce, whether granted for the fault of the wife or the husband, to give to her such share of her husband's real or personal estate as shall be just and reasonable. Laws of 1870, p. 180, § 27. The assignment of the homestead to the wife is within the terms of this power. And if it be said that the protection of the constitution is placed around a homestead, it may also be said that the power to grant divorces is also by the constitution expressly given to the district courts. Const., art. 2, § 18. And the constitutional grant of power to divorce, is broad enough to include the power to determine the subordinate and dependent questions of the family property, and the care and custody of the children. In this case we have only the *question of power*, to determine; for as the testimony is not before us we are unable to form any opinion as to the propriety of the assignment of the homestead to the wife.

As a second question in this case, it is asserted that it was error to award the custody of the children to one found to be an habitual drunkard. Here also we labor under the disadvantage of having none of the testimony bearing on this question before us. We cannot say that the court erred, because we do not know what facts were before it. The character of the husband, the associations by which he was surrounded, his constant absence from home, may all have been so shown in evidence as to make it apparent that it was unwise to give him the custody, and it may have been awarded to her as the least of two evils. We do not mean to say that any such testimony was introduced, for the record is silent thereon; but we do hold that unless it affirmatively appears in the record that there was none such, or similar, we cannot say that it was error to award the custody to the mother, rather than the father. The children were of tender years, and needed a mother's care, and if she was at all suitable she ought to have the care of them during their infancy. The court reserved in the order, as it had the right to do, the

power to change the custody; and if after the children pass that age which especially demands a mother's care, her habits of drunkenness should continue, and the father appear to be a proper person to have the charge of them, we cannot doubt that the court will modify its order and give him the custody. .

So far as the amount of alimony is concerned we suppose it was intended for the benefit of the children rather than of the wife. The law does not intend that a woman unfit to remain the wife, shall be supported in idleness by the toil of the husband. We however are not prepared to say that it was exorbitant when the custody and care of the children are taken into the account.

The judgment will be affirmed.

All the Justices concurring.