**In re Margaret Rose Stewart HILT, Debtor.**

**Bankruptcy No. 89–10974–13.**

United States Bankruptcy Court, D. Kansas.

Dec. 16, 1994.

Jan M. Hamilton of Hamilton, Peterson, Tipton & Keeshan, Topeka, KS, for debtor.

748

Sueann V. Schultz, Asst. Vice President and Associate Counsel, for Bank IV Topeka, N.A.

### MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Margaret Rose Hilt and Leonard D. Hilt owned a residence homestead as joint tenants with right of survivorship [1] before Margaret filed a petition for divorce in 1985. The District Court of Shawnee County, Kansas, entered a divorce decree on September 16, 1985, granting Margaret Hilt the homestead and Leonard Hilt a judicial lien [2] on the homestead to secure a money judgment in his favor of $61,771.00. Leonard Hilt assigned his lien to Bank IV Topeka, N.A., on June 30, 1987.[3]

Margaret Hilt [4] filed for Chapter 7 bankruptcy relief on April 25, 1989, claiming the homestead exempt under Kansas law.[5] On July 6, 1989, Margaret filed a motion under § 522(f)(1) [6] to avoid the judicial lien that Leonard had assigned to Bank IV.[7] Bank IV objected and filed a proof of claim as a secured creditor for $61,771.00, supported by a copy of the decree of divorce, the assignment of collateral described as a judicial lien, and copies of filed UCC–1s.[8] The Chapter 7 case was converted to Chapter 13 on August 3, 1989.

The parties have stipulated to the following facts:

A. The debtor is the owner of certain real estate located at 3821 Chelmsford Road, Topeka, Kansas; she occupies said real estate as her homestead pursuant to KAN. CONST., Art. 15, § 9, and K.S.A. 60–2301, and claimed it as such on her Schedule B–4 accompanying her Petition filed herein.

B. The legal description of the above-referenced real estate is as follows:

Chelmsford Road, Block 34A, Lot 10, Sherwood Estates to the City of Topeka, Shawnee County, Kansas

C. The debtor was divorced from her former husband pursuant to a Decree of Divorce filed on September 16, 1985, in Case No. 85–D–288, District Court of Shawnee County, Kansas. A certified copy of the divorce decree is attached as Exhibit "A".[9]

D. Paragraph 8 of the Decree of Divorce provides as follows:

"8. Title to the following described real estate is hereby transferred to the Petitioner [debtor herein] free of all right, title and interest of the Respon-

---

1. The parties stipulated at oral arguments that Mr. and Mrs. Hilt held the property in joint tenancy when Mrs. Hilt filed for divorce.

2. Under 11 U.S.C. § 101(37), " 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." Under 11 U.S.C. § 101(36), " 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." The judicial lien created in the divorce which is the subject of this matter arose in an equitable proceeding which appears to be covered in the definition of "judicial lien." At any rate, the parties do not dispute that the divorce-imposed lien is a judicial lien under 11 U.S.C. § 522(f)(1).

3. Debtor has not objected to the standing of Bank IV as assignee of the judicial lien nor has she protested its failure to object to her exemption claim under § 522(f) as affected by *Taylor v. Freeland and Kronz*, —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), so the Court considers these questions waived by the debtor.

4. The debtor appears by her attorney, Jan M. Hamilton of the firm of Hamilton, Peterson, Tip-

ton & Keeshan, Topeka, Kansas. Bank IV Topeka, N.A. (Bank IV), appears by its Assistant Vice President and Associate Counsel, SueAnn V. Schultz. There are no other appearances.

5. *See* 11 U.S.C. § 522(b), KAN. CONST., Art. 15, § 9, Kansas Statutes Annotated §§ 60–2312 and 60–2301.

6. Section 522(f)(1) provides: "Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(1) a judicial lien...."

7. Fed.R.Bankr.P. 4003(d) permits motion practice on such motions.

8. The assignment documentation is uncontested.

9. A copy of the divorce decree is not attached as an exhibit to this Memorandum Opinion.

dent [husband], except the judicial lien referred to hereinafter:

> Chelmsford Road, Block 34A, Lot 10, Sherwood Estates to the City of Topeka,
>
> Shawnee County, Kansas

subject to a mortgage [10] thereon in favor of Shawnee Federal Savings & Loan Association, dated March 10, 1970, recorded in Book 1724, page 283 of the records of the Register of Deeds in Shawnee County, Kansas. The Petitioner is ordered to assume and pay the remaining balance secured by such mortgage in accordance with its terms and to hold the Respondent harmless against any obligation for payment of the same."

E. Paragraph 9 of the Decree of Divorce provides as follows:

> "9. The Respondent is hereby granted a judicial lien against the above-described real estate, junior only to the lien of the first mortgage referred to above, in the sum of $61,771. Such amount shall be due and payable to the Respondent without interest at the earliest of the following events:
>
> a) At the time the above real estate is sold under an installment or lump sum contract;
>
> b) Upon the death or remarriage of the Petitioner;
>
> c) At such time as it is no longer used as a residence for the Petitioner;
>
> d) In any event, such sum, without interest, shall be due an [sic] payable not later than September 1, 1990."

F. Subsequent to the filing of the Decree of Divorce, the debtor's husband is' believed to have assigned his interest therein to another creditor, Bank IV of Topeka, N.A.

(Memorandum In Support Of Application To Avoid Lien filed July 6, 1989, at 1–3.) (Footnotes added.)

As the following passage from the decree reflects, the divorce court divided the Hilts'

property under the authority of Kansas statutes:

> IT IS FURTHER ORDERED BY THE COURT that all property, real or personal, is marital property as defined by K.S.A. 23–201b as amended, and that it was accumulated by the Petitioner and the Respondent during their marriage and by their joint industry. All such real and personal property is hereby divided as a division of marital property pursuant to K.S.A. 60–1610 and K.S.A. 23–201b and all amendments thereto, in accordance with the above findings of this Court.

(Decree of Divorce filed September 16, 1985, in Case No. 85–D–228 in the District Court of Shawnee County, Kansas, at 4, Exhibit A attached to Memorandum in Support of Application to Avoid Lien filed July 6, 1989.)

The bankruptcy schedules list the value of the home at $168,000.00 and the amount of a first mortgage thereon at $20,493.37, leaving an equity of $147,506.63, or for each spouse $73,753.31. The $61,771.00 judicial lien awarded to Leonard Hilt is $11,982.31 less than one-half the equity in the home. Presumably, the divorce court gave Leonard Hilt the judicial lien to equalize the division of property between the parties without requiring sale of the residence.

■ The United States Supreme Court examined § 522(f)(1) lien avoidance in *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). To be avoidable under the statute, a judicial lien must "fix" to an interest of the debtor in property at some point in time after the debtor obtains the interest. Stated conversely, "unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." *Id.* at 296, 111 S.Ct. at 1829. If the lien fixes before the debtor holds the interest in property, or at the same time the debtor receives the interest, the lien is not avoidable.

The parties in *Sanderfoot* stipulated that prior to the divorce judgment they had held

---

10. The husband was liable on this mortgage notwithstanding the decree's divestment of his interest in the property. The decree did not affect this liability.

the property in joint tenancy, each possessing an undivided one-half interest.[11] They further stipulated that the divorce decree dissolved any preexisting interest the non-debtor spouse had in the homestead. Because of this stipulation, the Supreme Court concluded that the lien could not have fixed on an interest of the debtor in property because the decree gave Sanderfoot his wholly new fee simple interest with Ms. Farrey's lien already attached. The Supreme Court stated:

> [T]he only interest that the lien encumbers is debtor's wholly new fee simple interest. The same decree that awarded Sanderfoot his fee simple interest simultaneously granted the lien to Farrey.... Sanderfoot took the interest and the lien together, as if he had purchased an already encumbered estate from a third party. Since Sanderfoot never possessed his new fee simple interest before the lien "fixed," § 522(f)(1) is not available to void the lien.

*Id.* at 299–300, 111 S.Ct. at 1830–31.

The Court also stated that the result would not be changed, "even if the divorce decree did not extinguish the couple's pre-existing interests but instead merely reordered them." *Id.* at 300, 111 S.Ct. at 1831. Expanding on this theme, the Court offered:

> The parties' current position notwithstanding, it may be that under Wisconsin law the divorce decree augmented Sanderfoot's previous interest by adding to it Farrey's prior interest. If the court in exchange sought to protect Farrey's previous interest with a lien, § 522(f)(1) could be used to undo the encumbrance to the extent the lien fastened to any portion of Sanderfoot's previous surviving interest. This follows because Sanderfoot would have possessed the interest to which that part of the lien fixed, before it fixed. But in this case, the divorce court did not purport to encumber any part of Sanderfoot's previous interest

even on the assumption that state law would deem that interest to have survived. The decree instead transferred Farrey's previous interest to Sanderfoot and, again simultaneously, granted a lien equal to that interest minus the small amount of personal property she retained. Sanderfoot thus would still be unable to avoid the lien in this case since it fastened only to what had been Farrey's pre-existing interest, and this interest Sanderfoot would never have possessed without the lien already having fixed.

*Id.* at 300, 111 S.Ct. at 1831.

Justice Kennedy, joined by Justice Souter, wrote a concurring opinion emphasizing Sanderfoot's concession that the Wisconsin divorce decree wholly extinguished the parties' property rights and put in place new ones. This concession was at the heart of the case and made it unnecessary to determine Wisconsin law on the fixing issue.

Justice Kennedy's concurrence goes on to suggest that under the laws of other states, the lien might fix to a preexisting interest of the debtor/spouse and thus justify avoidance under the terms of § 522(f)(1). Consequently, he recommended a legislative fix for this possibility.

■ Because of the concession in *Sanderfoot*, it was unnecessary for the Court to examine Wisconsin law on the fixing question. But, absent such a concession, when a divorce court grants one party the homestead and the other a compensating lien by decree, state law determines whether the fixing of the lien has occurred. *Farrey v. Sanderfoot*, 500 U.S. 291, 299, 111 S.Ct. 1825, 1830, 114 L.Ed.2d 337 (1991).

■ Relevant Kansas divorce law is found in K.S.A. § 60–1610(b), K.S.A. § 23–201(b), and *Cady v. Cady*, 224 Kan. 339, 581 P.2d 358 (1978).

---

**11.** Apparently this stipulation resulted from the parties' view of Wisconsin statutory law. According to *Sanderfoot* 500 U.S. at 302, 111 S.Ct. at 1832, Wisconsin has adopted the Uniform Marital Property Act which provides that " '[a]ll property of spouses is presumed to be marital property,' Wis.Stat. § 766.31(2) (1989–1990), and '[e]ach spouse has a present undivided one-half interest in each item of marital property.' § 766.31(3)." Under this statute, the pre-divorce-petition joint tenancy was viewed as having been transformed into a tenancy more akin to a Kansas tenancy in common under which the parties own an undivided one-half interest in the property.

Kansas Statutes Annotated § 60–1610(b) grants the power to divide property between the parties in a divorce case. At the time of the divorce decree in this case it read, as it still does:

(b) *Financial matters.* (1) *Division of property.* The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts, by: (A) a division of the property in kind; (B) awarding the property or part of the property to one of the spouses and requiring the other to pay a just and proper sum; or (C) ordering a sale of the property, under conditions prescribed by the court, and dividing the proceeds of sale.

In 1978, the Legislature added subsection (b) to K.S.A. § 23–201 to clarify the income tax effect of a division of property in a Kansas divorce.[12] The statute was effective on July 1, 1978. As it appeared in 1985 when this divorce was filed, K.S.A. § 23–201(b)(1) reads:

**K.S.A. 23–201. Married persons; separate property; marital property. (a)** ....

(b) All property owned by married persons, whether described in subsection (a) or acquired by either spouse after marriage, and whether held individually *or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property* at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a *common ownership in marital property which vests at the time of commencement of such action,* the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 1980 Supp. 60–1610 and amendments thereto.

(Emphasis added.)

On July 15, 1978, the Kansas Supreme Court decided *Cady v. Cady,* 224 Kan. 339, 581 P.2d 358 (1978). It addressed an income taxation problem that the United States Supreme Court created in *U.S. v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), when it held that a taxable capital gain resulted when a husband's appreciated stock was exchanged for his wife's marital rights in a divorce property settlement. *Cady* attempted to avoid this result in Kansas by ruling that the filing of a divorce petition creates in the spouses a common or co-ownership in marital property. In reaching its conclusion, *Cady* said:

Prior to the filing of a petition for divorce a spouse may dispose of his or her personal property without regard to the other spouse. At that time a spouse possesses only an *inchoate interest* in real estate held by the other spouse. The filing for divorce, however, has a substantial effect upon the property rights of the spouses. At that moment each spouse becomes the owner of a vested, but undetermined, interest in all the property individually or jointly held. The court is obligated to divide the property in a just and equitable manner, regardless of the title or origin of the property.

We hold that the filing of a petition for divorce or separate maintenance *creates a species of common or co-ownership in one spouse in the jointly acquired property held by the other,* the extent of which is determined by the trial court pursuant to K.S.A.1972 Supp. 60–1610(b).

*Id.* 224 Kan. at 344, 581 P.2d 358 (emphasis added) (citations omitted).

As the quoted holding shows, *Cady* involved only "jointly acquired property" as contrasted with "jointly owned property." Jointly acquired property refers to real or personal property the spouses accumulated during their marriage that is titled in the name of one spouse only. Jointly owned property is real or personal property titled in the names of both spouses in some form of co-ownership such as joint tenancy or tenancy in common. *Cady* severely limits application of the marital property statute. Al-

---

**12.** For an explanation of the background leading to the statute see Keith (Casey) D. Cohen, *Property Settlements in Divorce and Kansas Senate Bill # 907,* 47 J.B.A.K. 275 (Winter 1978). Senate Bill # 907, Chapter 134, L.1978, was enacted as K.S.A. § 23–201(b).

though K.S.A. § 23–201(b) had come into effect on July 1, 1978, while *Cady* was handed down on July 15, 1978, the *Cady* opinion refused to apply the statute while addressing the taxation problem. In cases since *Cady*, the Kansas high court has continued to rule that the statute was not intended to alter prior or existing Kansas law. *Wachholz v. Wachholz*, 4 Kan.App.2d 161, 162–63, 603 P.2d 647 (1979); *In re Marriage of Smith*, 241 Kan. 249, 252, 737 P.2d 469 (1987).

The statute includes jointly owned property (joint tenancy and tenancy in common) within its definition of marital property. But since *Cady* deals only with jointly acquired property and denies the applicability of the statute, it may be argued that the filing of a divorce petition has no effect on jointly owned property.[13]

As might be expected, there are no Kansas cases directly addressing the fixing issue. However, there are two post-*Sanderfoot* unpublished bankruptcy court decisions in Kansas that deal with the question. Like the instant case, they both involve homesteads previously held in joint tenancy that were received in a divorce by one spouse with a judicial lien in favor of the other. *Schmidt v. Schmidt*, (*In re Schmidt*), Case No. 90–42457–7, Adv. No. 90–8195 (Bankr.D.Kan. August 17, 1992) (Pusateri, J.); *In re Nickel*, Case No. 92–12852 (Bankr.D.Kan. February 17, 1994) (Pearson, J.).

*In re Nickel* adopts *Sanderfoot*'s simultaneous fixing rule as controlling the decision. While it does not explain what Kansas law it relies upon, it concludes that the Kansas decree simultaneously created the interest and the lien; therefore, the lien could not be avoided under § 522(f)(1).

*In re Schmidt* recognizes that state law determines the fixing issue and attempts to determine the content of that law. In doing

so, it construes Kansas law to create an "extinguishment by filing" rule:

> The Court believes it is clear under *Cady*, 60–1610(b), and 23–201(b) that the filing of a divorce petition in Kansas *extinguishes the parties' previous property interests* and replaces them with a pool of property known as marital property, which is co-owned by the parties. The trial court then divides the marital property in the divorce decree, thus determining the extent of each spouse's interest in that property. *All the interests defined by the decree are new ones, received with any liens in favor of the other spouse already attached.* See *In re Rittenhouse*, 103 B.R. 250, 255–56 (D.Kan.1989). (Emphasis added.)

*Schmidt* at 7.

After clearing away all previous property interests, the court ruled that the decree can simultaneously transfer a fee interest subject to a judicial lien as was done in *Sanderfoot*.

In reaching its "extinguishment-by-filing" theory, the court quoted the statement in *Cady* describing what happens at the filing of the divorce, to wit: "At that moment each spouse becomes the owner of a vested, but undetermined, interest in all the property individually or jointly held." *Cady v. Cady*, 224 Kan. 339, 344, 581 P.2d 358 (1978). Although acknowledging that *Cady* involved jointly acquired property while *Schmidt* was considering jointly owned property, the court apparently felt that its extinguishment-by-filing theory was equally applicable to the jointly owned property under consideration. This follows if K.S.A. § 23–201(b) is given effect because its statutory language includes joint tenancy and tenancy-in-common property. However, this Court is not quick to agree with *Schmidt* that under Kansas law the filing of a divorce extinguishes all prior interests spouses have in property.[14]

---

**13.** *But see* Keith (Casey) D. Cohen, *Property Settlements in Divorce and Kansas Senate Bill # 907*, 47 J.B.A.K. 275 (Winter 1978), which points out at 277 *et seq.* that the tax treatment of divisions of jointly owned property are changes in form rather than of substance, at least where the divisions are to eliminate the survivorship element of a joint tenancy or partition a tenancy in common. However, he acknowledges the argument

that if jointly-owned property is transferred exclusively to one party, a taxable transaction much like *Davis* has occurred.

**14.** A number of questions about the wisdom of the extinguishment theory present themselves. What about the homestead status of the property? Is it extinguished by the divorce filing so that a judgment creditor's lien would attach dur-

By its nature, bankruptcy creates a mix of state law and federal law questions. For example, in this case, whether the divorce court lien is a "judicial lien" under § 522(f)(1) is a federal question determined by the statutory definitions of "lien" and "judicial lien." Whether the homestead is exempt is a state law question,[15] but federal law determines the "extent of impairment" of an exemption. *Matter of Henderson*, 18 F.3d 1305 (5th Cir. 1994); *In re Chabot*, 992 F.2d 891 (9th Cir. 1993). The "fixing" question is a state law question as *Sanderfoot* has explained. *Sanderfoot*, 500 U.S. at 299, 111 S.Ct. at 1830.

When a bankruptcy judge consults state law on a bankruptcy-related question, there is usually a plethora of rules and the process is one of selecting among them. But, in this case, there is a dearth of Kansas law on the fixing issue. How should a federal bankruptcy judge determine the content of state law in such a case? Guidance comes from the principles developed by the federal district courts in diversity cases under the Erie Doctrine and the Supreme court decisions in its wake.[16] While the Erie Doctrine developed in diversity jurisdiction cases, it also applies in federal-question jurisdiction cases like this

one. 19 Charles Alan Wright et al., *Federal Practice and Procedure*, § 4515 at 275.

■ When state law on a question is absent, a federal court in diversity is charged with predicting what the state's highest court would hold if it were deciding the issue:

> In applying state law in diversity cases, each federal court—whether district court or appellate court—functions as a proxy for the entire state court system, and therefore must apply the law that it conscientiously believes would have been applied in the state court system, which includes the state appellate tribunals. In other words, the federal court must determine issues of state law as it believes the highest court of the state would determine them, not necessarily (although usually this will be the case) as they have been decided by other state courts in the past.

*Id.*, § 4507 at 88–89 (footnote omitted).

The question, then, is what would the Kansas Supreme Court decide if it were asked whether a divorce decree passes the new interest simultaneously with the lien or whether the lien fixes to the new interest after it passes to the debtor spouse?

ing the divorce? Is the survivorship element of joint tenancy extinguished upon the filing of the divorce petition so that neither spouse would take the homestead in the event of the death of the other during the case? Since divisions of joint tenancies and tenancies in common were customarily treated as co-ownerships not subject to taxation upon division, does their inclusion in K.S.A. § 23–201(b) have any real effect? *See* Cohen, *supra* at 278, discussing Rev.Ruling 56–437. Probably not, so why should they be extinguished? In *Property Settlements in Divorce and Kansas Senate Bill # 907*, 47 J.B.A.K. 275 (Winter 1978), Keith (Casey) D. Cohen points out that estates in joint tenancy and tenancy in common are already vested before the filing of a divorce petition. He suggests an amendment to Senate Bill # 907, the predecessor to K.S.A. § 23–201(b), to clarify the timing of the vesting. The suggested amendment, which was not adopted, leads one to wonder whether K.S.A. § 23–201(b) causes any changes to a joint tenancy when a divorce petition is filed, other than to emphasize that the property may be equitably divided under K.S.A. § 60–1610, a point that did not need emphasis. Although the concept of severance of a joint tenancy is different from that of extinguishment of such an estate, does the extinguishment-by-filing doctrine affect cases holding that di-

vorce decrees, not the filing of a divorce petition, sever the unity of possession between husband and wife and create a tenancy in common? *Carson, Executrix v. Ellis*, 186 Kan. 112, 348 P.2d 807 (1960).

**15.** Kansas has opted out of the federal exemption scheme so Kansas law controls allowable exemptions.

**16.** *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Company of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *See also* 19 Charles Alan Wright, et al., *Federal Practice and Procedure*, § 4501 *Et seq. and Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). While *Butner's* rationale rests on *Sturges v. Crowninshield*, 4 Wheat. 122, 4 L.Ed. 529; *Ogden v. Saunders*, 12 Wheat. 213, 6 L.Ed. 606; and *Stellwagen v. Clum*, 245 U.S. 605, 38 S.Ct. 215, '62 L.Ed. 507; rather than *Erie*, it is certainly consistent with the Erie Doctrine. *Butner* at 54, n. 9, 99 S.Ct. at 918 n. 9.

754

In our federal system, domestic relations are the exclusive province of states. The states have a well-developed competence and a strong interest in the proper implementation of their policies in this area. The policy and interest of a state's highest court would be to support and guard its power to make equitable divisions of property in domestic relations cases. Such a court is unlikely to announce a rule that undercuts its authority to divide marital property absent some important policy reason for doing so.

In reaching its conclusion, the Kansas court would take account of the legislative history of § 522(f)(1) as expounded in *Sanderfoot* which said:

> What specific legislative history exists suggests that a principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts. As the House Report stated:
>
>> "The first right [§ 522(f)(1)] allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions."
>>
>> H.R.Rep. No. 95–595, *supra,* at 126–127.

*Sanderfoot* at 297–98, 111 S.Ct. at 1829. From this comment on legislative history, the Kansas court would easily conclude that Congress did not aim § 522(f)(1) at judicial liens created to equalize divorce property divisions.

■ Under Kansas law, a judgment lien does not attach to a property occupied as a homestead unless the lien is based upon one of the exceptions set out in the Constitution and its enabling statute.[17] *Jones v. St. Francis Hosp. & School of Nursing,* 225 Kan. 649, 653, 594 P.2d 162 (1979). Nevertheless, since the 1877 case of *Blankenship v. Blankenship,*

19 Kan. 159 (1877), the Kansas courts have recognized the power to impose a lien on a homestead in a divorce case and to sell the homestead to enforce the lien.[18] The source of the power came from the earlier case of *Brandon v. Brandon,* 14 Kan. 342 (1875) (holding that the divorce court could grant to the wife a homestead titled in the husband's name). In *Blankenship,* the Kansas Supreme Court reasoned that the power approved in *Brandon* was the greater power. If the divorce court could take the homestead from the husband and give it to the wife, as it did in *Brandon,* it could impose a lien on the homestead and sell the homestead to enforce the lien to insure an equitable property division, as it did in *Blankenship.*

On appeal to the Kansas Supreme Court in *Brandon,* the husband argued that the wife's interest in the homestead arose from the marriage relationship and that when the decree ended that relationship, her rights and interest in the homestead ceased, leaving him as the owner of the property. Being the head of the family, the owner of the property, and claiming a homestead in the property, he contended that constitutionally he could not be deprived of the homestead property. In rejecting the husband's argument, the court said: "The divorce, and the adjustment of property interests, are not to be regarded as transpiring at different times, but as contemporaneous." *Brandon* at 266.

This ruling indicates that Kansas divorce decrees operate contemporaneously to affect the parties' rights. Furthermore, if a judgment lien does not attach to a homestead outside of a divorce, as *Jones* holds, but does attach inside a divorce, as *Blankenship* holds, the reason for the difference may be that the divorce decree creates property interests simultaneously. If so, the contemporaneous transfer of property interests in the form of a fee and a lien thereon negates the idea that under Kansas divorce law, the lien

---

17. A homestead is exempted from forced sale under any process of law other than for taxes, obligations contracted for the purchase of the premises, erection on improvements on the premises, or a consensual lien granted by the husband and the wife. Kansas Constitution, Art. 15, § 9; K.S.A. § 60–2301.

18. *See also Bohl v. Bohl,* 234 Kan. 227, 670 P.2d 1344 (1983), holding that a homestead can be sold to satisfy a judicial lien securing a debt for alimony or property division.

fixes to one spouse's property interest after he or she obtains that interest.

In light of the examined law, the purpose of § 522(f)(1), and the state court's paramount concern with the division of marital property as reflected in K.S.A. § 60–1610(b), this Court finds that the Kansas Supreme Court would rule that the divorce decree in this case granted Margaret Hilt's interest in the homestead contemporaneously with the lien given Leonard Hilt in order to equalize the distribution of property in a just and reasonable way. Furthermore, that court would determine that Leonard Hilt's judicial lien did not fix on a preexisting interest in the homestead held by Margaret Hilt. Consequently, the judicial lien in this case is not avoidable under § 522(f)(1) of the Bankruptcy Code.

The Court finds that this proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan.Rule 705).

IT IS SO ORDERED.