**In re Billy Ray HUSKEY, Debtor.**

**Jeannette Joy HUSKEY, Plaintiff,**

v.

**Billy Ray HUSKEY, Defendant.**

Bankruptcy No. 94–11426–A7.
Adv. No. 95–90076–A7.

United States Bankruptcy Court,
S.D. California.

June 13, 1995.

Bruce M. Douthit, San Diego, CA, for plaintiff Jeannette Joy Huskey.

Larry Hofreiter, Vista, CA, for debtor, defendant Billy Ray Huskey.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Bankruptcy Judge.

Debtor Billy Ray Huskey ("Debtor") makes this motion for immediate distribution

of funds being sequestered, claiming the funds are his exempt community property from the sale of the marital residence. The Debtor's ex-spouse, Jeannette Joy Huskey ("Mrs. Huskey") opposes the motion, claiming she either owns the funds or has a security interest. Although filed in an adversary proceeding for nondischargeability, the Court will treat this motion as a contested matter under Fed.R.Bankr.P. 9014. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and § 157, and the matter is a core matter under 28 U.S.C. § 157(b)(2)(K) and (O).

## FACTS

The Debtor filed for divorce and a dissolution judgment was entered on February 18, 1992. The Debtor and Mrs. Huskey stipulated to a dissolution settlement which the court entered as an addendum to the judgment. The addendum provides:

> The marital residence ... after completion of construction shall be listed for sale upon terms mutually agreeable to the parties.... Petitioner shall be entitled to exclusive use and possession of said residence ... and further, shall be solely responsible for all payments of mortgage, taxes, insurance, utilities, and maintenance of the property ... without reimbursement or credit from respondent. When sold, the net proceeds shall be divided equally except that from petitioner's one half of the net proceeds the sum of $25,500 shall be paid to respondent in order to balance the equities in the division of community property and debts.[1]

The addendum allocated other assets and liabilities, waived spousal support, and provided that each party pay their own attorney's fees. Thereafter, the court entered additional findings and ordered the Debtor to pay Mrs. Huskey "the sum of $4,445.00 less one-half of actual costs of landscaping" and $2,889.00 for attorney's fees (the "additional award"). This additional award was payable

---

1. Exhibit B to Debtor's Motion for Distribution of Funds Being Held in Trust filed March 15, 1995 (the "Debtor's motion"). The Debtor filed his motion after the Court denied Mrs. Huskey's Motion for Distribution of Funds being Held in Trust and for Sanctions filed February 3, 1995 ("Mrs. Huskey's motion").

from the "sale of the marital residence." [2] Therefore, the Debtor owes Mrs. Huskey approximately $32,834 from the sale of the residence.

It is undisputed that title remained in both parties' name, that Mrs. Huskey failed to record the judgment, and that the Debtor defaulted in paying the mortgage, insurance and taxes (the "assigned debts").

On October 28, 1994, the Debtor filed a voluntary Chapter 7 petition. He scheduled a "joint tenant" interest in the marital residence, a $100,000 homestead exemption, and a $40,000 general unsecured claim owed to Mrs. Huskey for "division debt" from their divorce. No one objected to the exemption and the trustee abandoned the residence. Mrs. Huskey has filed a complaint to determine nondischargeability of her unsecured claim under new Code § 523(a)(15).[3]

Post-petition, the Debtor and Mrs. Huskey sold the marital residence for $272,500. The net proceeds for distribution were only $61,682.33 instead of the $83,083 which were expected and which would have been available had the Debtor paid the assigned debts. Mrs. Huskey has received $31,682 (approximately one-half); the other $30,000 remains sequestered pursuant to court order.

Mrs. Huskey contends she is entitled to the remaining funds for several reasons. First, she contends she should receive an additional $9,859 as her community share. This would give her the amount she should have received had the Debtor paid the assigned debts. Second, she contends the remainder should be applied to reduce the amounts owed on the equalizing payment and the additional award. She contends the divorce decree increased or "augmented" her community share to include the amounts necessary to pay these debts; or that it granted her a security interest.

### ISSUES

The parties' numerous briefs and supplemental briefs present a smorgasbord of arguments ranging from lien avoidance to the funds never becoming property of the bankruptcy estate. The Court had understood Mrs. Huskey's main contention to be that she possessed no lien, and that she owned the funds in fee under the "augmented" fee theory.[4] At the April 13, 1995 hearing on this motion, Mrs. Huskey argued that she had a "security interest" rather than a judicial lien or an augmented fee. The Court will consider what are now believed to be the main issues:

1. Is Mrs. Huskey's community share one-half the actual net proceeds or the net proceeds which she would have received had the Debtor paid the assigned debts?

2. What interest, if any, does Mrs. Huskey have in the sequestered funds?

3. Should the Court order immediate distribution of the sequestered funds?

### DISCUSSION

1. *Mrs. Huskey's Community Property Share is One–Half the Actual Net Proceeds.*

█ Mrs. Huskey provides no authority for the proposition that she is entitled to the net proceeds had the Debtor paid the assigned debts, nor does she consider the impact of Code §§ 523(a)(5) and (15), and § 524(a)(3). It is basic California and bankruptcy law that support payments are nondischargeable and property settlements are dischargeable. 33 Cal.Jur.3d (Rev) Part 2, Family Law, § 1593 and § 1594 (1994); 3 L. King, *Collier on Bankruptcy*, ¶ 523.15 at 523–114 (15th ed. 1994). Because this frequently enabled debtors to avoid legitimate marital obligations, such as a hold harmless provision like the one in this case, Congress

---

2. Exhibit B to Mrs. Huskey's supplemental declaration filed February 22, 1995, in support of her motion. At the April 13, 1995 hearing on the Debtor's motion, Mrs. Huskey asked the Court to judicially notice her earlier motion. This is necessary to place all the facts and arguments before the Court.

3. This complaint does not seek a determination of liens or any other declaratory relief. Nevertheless, the parties have filed their motions in this adversary proceeding.

4. *See* Mrs. Huskey's opposition to the Debtor's motion filed March 31, 1995. This opposition relies entirely on the "augmented" fee theory.

enacted Code § 523(a)(15). Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (codified and amended in various sections of 11 U.S.C.); 3 L. King, *Collier on Bankruptcy*, ¶ 523.19E at 523–165 to 166 (15th ed. 1994).

In this case, the Debtor owed the obligation to pay the assigned debt because the decree ordered payment, and because he resided in the marital residence pending its sale. However, the nature of the obligation remained a community obligation. *See In re Marriage of Oldfield*, 94 Cal.App.3d 259, 262–63, 156 Cal.Rptr. 224 (1979) (husband's assumption of mortgage is fair exchange for his use of residence, but does not change the nature of the community obligation).

The California Family Code recognizes that personal liability remains for community obligations assigned to the other spouse. The remedy is to pay the debt and seek reimbursement from the spouse assigned the debt. Fam.C. § 916(a)(1) and § 916(b). However, this right of reimbursement is precluded where the spouse has received a discharge of the debt in bankruptcy. *In re Marriage of Clements*, 134 Cal.App.3d 737, 184 Cal.Rptr. 756 (1982).

With this clear authority both in California and under the Bankruptcy Code, the Court cannot rule that Mrs. Huskey's community share constitutes an amount equal to the net proceeds had the Debtor paid the assigned debt. Mrs. Huskey's community share is one-half the actual net proceeds, ($30,841.17), so Mrs. Huskey has already received more than her share. She can seek reimbursement for the loss of net proceeds, (the $9,859), if she prevails on her § 523(a)(15) complaint.

2. *Mrs. Huskey's Interest in the Remaining Funds is Neither Ownership Nor a Security Interest, but Instead, an Equitable Lien.*

Mrs. Huskey contends that the Court should not distribute the remaining funds to the Debtor because she has an interest in the funds. She claims her interest is either augmented ownership or a security interest. For the reasons discussed below, the Court concludes that she has neither. Mrs. Huskey's interest is, instead, an equitable lien.

a. *The property settlement did not "augment" Mrs. Huskey's ownership interest.*

■ Mrs. Huskey contends that *In re Marriage of Seligman*, 14 Cal.App.4th 300, 18 Cal.Rptr.2d 209 (1993) and the case cited within it, *Matter of Paderewski*, 564 F.2d 1353 (1977), read together, support her proposition that the property settlement clearly "augmented" her ownership interest to include her community share, plus the amount necessary to pay the equalizing payment and the additional award. Because she received ownership rather than a lien, the balance of the funds never became property of this bankruptcy estate.

The Court disagrees. *Seligman* nowhere mentions the word "augment" and involves distinctly different facts. *Seligman* deals with undivided community property on the petition date, a fact missing in this case. It held that a debtor/spouse cannot transmute undivided community property into separate property by filing bankruptcy, scheduling the property as exempt, and then relying on the discharge to discharge the prospective obligation to divide community property. *Seligman*, 14 Cal.App.4th at 310, 18 Cal.Rptr.2d 209.

Similarly, *Paderewski* nowhere mentions the word "augment." This Bankruptcy Act case relies on different statutes, and is arguably no longer good law. Mrs. Huskey has not addressed the effect of the Bankruptcy Reform Acts of 1978 and 1994 on this case. Furthermore, in upholding the non-debtor's right to reimbursement, *Paderewski* relied on very specific language in the decree requiring reimbursement "out of the sale of the property." *Paderewski*, 564 F.2d at 1358 n. 3. This right to reimbursement does not mean the court "augmented" the ownership interests.

In at least one instance, a bankruptcy court has ruled that the state court division adjusted the ownership interests. *In re Vassilowitch*, 72 B.R. 803 (Bankr.D.Mass.1987). Mrs. Huskey cited this case in her supplemental points & authorities in support of her

earlier motion. The Court finds *Vassilowitch* factually distinguishable from this case. In *Vassilowitch,* the property settlement expressly adjusted the interests between the parties to one-third and two-thirds, and decreed that unpaid arrearages would be deducted from the plaintiff's one-third. *Vassilowitch,* 72 B.R. at 805. No similar language appears in this property settlement.

Furthermore, even if the state court had expressly increased Mrs. Huskey's "ownership" interest, this Court is not bound by the state court's ruling. The Bankruptcy Code's definition of "judicial lien" controls. *In re Yerrington,* 144 B.R. 96, 98–99 (9th Cir. BAP 1992) (state courts cannot vary what is otherwise a judicial lien by characterizing it as "ownership").

Thus, while it is possible for a dissolution decree to increase or augment one spouse's ownership interest, the language in this decree grants only a right of payment secured by a lien.

b. *Mrs. Huskey's interest is not a security interest.*

■ Having lost the "augmented" ownership argument in her motion for distribution, Mrs. Huskey now characterizes her additional interest as a "security interest." She cites *In re Hart,* 50 B.R. 956 (Bankr.D.Nev.1985) and *Wicks v. Wicks,* 26 B.R. 769 (Bankr. D.Minn.1982) for support. In both cases, the property settlements granted liens securing equity in exchange for transferring title solely to one spouse. *Hart,* 50 B.R. at 958; *Wicks,* 26 B.R. at 770. The bankruptcy courts determined that the liens more closely resembled purchase money obligations than judicial liens because they involved the consensual, simultaneous transfer of an ownership interest in exchange for a lien. *Hart* at 961; *Wicks* at 771. By finding security interests, these courts preserved liens that were otherwise avoidable under Code § 522(f).

Other courts have adopted the security interest analogy to preserve judicial liens. *See e.g. In re Stone,* 119 B.R. 222 (1990)

(court compares three different property settlements, finding two constitute security agreements and one does not); *In re Shands,* 57 B.R. 49 (1985) (recorded judicial decree conveying equity constitutes a security interest even though no "lien" was expressly granted); *In re Scott,* 12 B.R. 613 (Bankr. W.D.Okla.1981) (judicial decree granting "judgment lien" constitutes unavoidable security interest).

However, the cases were decided before the United States Supreme Court's ruling in *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). This decision eliminated the ability to avoid judicial liens where title is transferred to the debtor. The Supreme Court held that the debtor, who received title to the community residence in fee simple, could not avoid the judicial lien securing his wife's share of the equity. *Sanderfoot,* 500 U.S. at 300, 111 S.Ct. at 1831. The Court reasoned that the debtor did not possess his new fee simple interest before the lien "fixed" so § 522(f) was not available. *Id.* at 300, 111 S.Ct. at 1831. Since *Sanderfoot,* courts do not appear to use the security interest analogy to preserve judicial liens. *See e.g. In re Hilt,* 175 B.R. 747 (Bankr. D.Kan.1994); *In re Sammut,* 171 B.R. 411 (Bankr.M.D.Fla.1994).

The Debtor argues that *Sanderfoot* and the security interest cases are inapplicable because they involve different facts. That is, Mrs. Huskey retained her interest in the marital home and she received her share of the community proceeds. Presumably, the Debtor means that there is less inequity in this case because Mrs. Huskey was not "defrauded" into transferring her interest to him. *See, Sanderfoot,* 500 U.S. at 298–99, 111 S.Ct. at 1830 (citing *In re McCormick,* 18 B.R. 911, 913–14) ("to permit lien avoidance in these circumstances ... would be to allow judicial lienholders to be defrauded").[5] While this argument is interesting, *Sanderfoot* makes it clear that the critical inquiry is not the equities of the parties. Rather, it is whether the debtor ever possessed the inter-

---

**5.** Further, the Debtor argues that the equities clearly favor him over Mrs. Huskey. He states that Mrs. Huskey received the family business so he needs the sequestered funds to start his own business.

est to which the lien fixed before the lien fixed. *Sanderfoot,* 500 U.S. at 299, 111 S.Ct. at 1830. This is a timing issue that has nothing to do with the equities of the parties.

Similarly, the Court will not consider the equities of the parties in deciding whether Mrs. Huskey has a security interest. Nothing in the decree purports to grant Mrs. Huskey a security interest. The only reason for finding a security interest instead of a judicial lien is to preserve Mrs. Huskey's interest from possible lien avoidance because it might seem equitable for Mrs. Huskey to retain her lien. Bankruptcy Code §§ 101(36) and (51), (which define "judicial lien" and "security interest"), do not indicate that equitable considerations are the distinguishing difference between the two. Furthermore, as noted in the preceding paragraph, Code § 522(f) nowhere includes "equity" as criteria for avoiding judicial liens.[6] The Court declines to find a security interest simply because it seems fair for Mrs. Huskey to retain her lien.

   c.   *Mrs. Huskey has an equitable lien, and in this circuit the equitable lien is a judicial lien.*

■ The Debtor argues and Mrs. Huskey agrees that she does not have a judicial lien because she failed to record the divorce decree. However, the Court is not convinced that the parties are correct. The language in the decree clearly indicates that the parties intended to charge the Debtor's share of the proceeds with paying the equalizing payment and the additional debt. Courts have recognized that this arrangement creates an equitable lien. *In re Donahue,* 862 F.2d 259, 265 (10th Cir.1988) (citations omitted). This accords with California law, which recognizes that specific property can be charged with an equitable lien. 42 Cal.Jur.3d, Liens, §§ 10–12 (1978). Therefore, this Court finds that Mrs. Huskey has an equitable lien.

■ The Court reiterates that this equitable lien is not a security interest. In this circuit liens arising from a judicial decree are judicial liens falling within the scope of Code § 522(f). *In re Catli,* 999 F.2d 1405, 1407 n. 3 (9th Cir.1993) ("*Sanderfoot* ... has not overruled our holding in *Pederson* that a lien imposed by a court in a divorce proceeding is a judicial lien."). Judicial liens and security interests are mutually exclusive types of liens. *See,* Legislative History to Code § 101(37); H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 25 (1978) U.S.Code Cong. & Admin.News pp. 5787, 5963, 6173. (In general, there are three categories of liens and "those three categories are mutually exclusive."); and *In re Stone,* 119 B.R. at 227. Mrs. Huskey's equitable lien is necessarily a judicial lien and avoidable under Code § 522(f).

3.   *The Debtor Has No Right to the Funds Until He Avoids the Judicial Lien.*

The remaining funds are encumbered by Mrs. Huskey's judicial lien, which must be avoided before the Debtor can enjoy his homestead exemption. His ability to avoid the lien depends on whether he satisfies the other requirements of Code § 522(f). The Debtor's motion briefly mentions lien avoidance, but does not technically request this relief. Additionally, Mrs. Huskey agreed she had no judicial lien so she has not considered whether the lien is avoidable. In a prior case the Court decided this issue prematurely, and hesitates to do so again. *See, In re Mayer,* 167 B.R. 186 (9th Cir. BAP 1994).

Therefore, the Debtor is directed to file a separate motion in the main case avoiding the lien to bring this issue before the Court. The outcome of this motion will likely turn on state law. *See, Sanderfoot,* 500 U.S. 291, 302, 111 S.Ct. 1825, 1832, 114 L.Ed.2d 337 (Kennedy, J., concurring); *Hilt,* 175 B.R. at 750–55.

### *CONCLUSION*

Mrs. Huskey's community property share is one-half the actual net proceeds. This

---

**6.** The equities of the parties is relevant only where the judicial lien secures support debts. This is because the Bankruptcy Reform Act of 1994 added Code § 522(f)(1)(A)(ii), which limits the right to avoid judicial liens securing support debts. Like Code § 523(a)(5), Congress placed the spouse's right to retain a lien securing support above the debtor's "fresh start." Mrs. Huskey has alleged only that her debts are property division debts.

property never became property of the bankruptcy estate so she properly received distribution of her one-half share. Mrs. Huskey does not own the remaining funds under the "augmented" fee theory and she does not possess a security interest. Nevertheless, she has an equitable lien encumbering the funds. The equitable lien is a judicial lien subject to lien avoidance under Code § 522(f). The Court leaves the lien avoidance issue to another day. Until then, the funds will remain sequestered subject to Mrs. Huskey's judicial lien.

This Memorandum Decision is in lieu of findings of fact and conclusions of law. Debtor's counsel is directed to prepare an order in accordance with this Memorandum Decision within ten (10) days of the date of entry.